## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

SAMUEL R. ROBERTSON, ET AL. v. J. MORTON ROBERTSON, ET AL.

June 11, 1973.

Record No. 8070.

Present, Snead, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*David A. Melesco; William N. Alexander, II (Thomas Keister Greer; Greer, Melesco & Alexander,* on brief), for appellants.

*B. A. Davis, III (Davis, Davis, Davis & Raine,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the court.

Appellants, Samuel R. Robertson and his wife, appeal from a final decree entered January 11, 1972, which enjoined them from interfering with the use by the appellees, J. Morton Robertson and his wife, of a private roadway of appellants extending from State Route 40 to appellees' property in Franklin County. We must determine whether and, if so, to what extent an easement over this roadway exists for the appellees' benefit.

Because of the complexity of the conveyances involved, we shall refer to various parcels by number as indicated on the attached sketch which is not drawn to scale.

On July 29, 1937, John L. Dillard, Executor, conveyed Lot 2 (.77 acre) to Samuel E. Robertson, father of Samuel R. Robertson (Samuel) and brother of J. Morton Robertson (Morton). On the same day Dillard conveyed Lot 3 (4.47 acres), then including Lots 4 and 5, to Boone. Deeds to both parcels described them as bounded by a "new thirty-foot roadway" or a "new roadway", which is Lot 1.

In 1941 Boone conveyed to Morton Lot 4 (.35 acre) adjoining the roadway and so described. Shortly thereafter Morton acquired Lot 6 (4.84 acres) from A. L. Crook. This Crook parcel was described in the deed by metes and bounds as adjoining Dillard but it was never a part of the Dillard lands. The remainder of the Crook lands lies west of Lot 6 and adjoins Route 40.

In 1948 Morton acquired from Boone Lot 5, a small strip of land 20 feet wide and about 208 feet long (.09 acre) which connected his Lots 4 and 6. But in 1949 he conveyed Lot 4 to Bowles.

Samuel E. Robertson conveyed Lot 2 to his son, Samuel, in 1962. In 1968 a special commissioner conveyed the balance of the Dillard estate, approximately 300 acres, to Worley who in turn conveyed various tracts thereof to Samuel a year later. One of the tracts included the .22 acre parcel which is Lot 1 or the thirty-foot roadway.[1]

---

[1] At oral argument it was disclosed that while the appeal was pending appellants had conveyed away Lot 2, but that Samuel Robertson was still vested with title to Lot 1, the thirty-foot roadway.

Route 40

4

Bowles
(formerly
J. Morton
Robertson)

1

30-foot roadway

2

Samuel
Robertson

5

3

Boone
(originally including 4 & 5)

6

J. Morton
Robertson

(formerly part of
Crook property)

N

Beginning in 1941 Morton used the roadway to reach Lot 4, which then belonged to him, but he reached Lot 6 by another means. After 1946 he began to reach Lot 6, which he used or rented to others for gardening and grazing, by traveling over the roadway. He testified that his purpose in acquiring Lot 5 in 1948 was to employ it as an alternate route between the northern portion of the thirty-foot roadway and Lot 6 because of the difficult terrain along the southern portion of the roadway. From 1946 until 1952 Morton lived in another part of the state, although he continued to own Lots 5 and 6 and occasionally returned to mow them.

The roadway is rendered virtually impassable for vehicles by a tree which grows in the middle of it about 15 feet from Route 40 and a stream with steep banks which traverses it approximately halfway between Route 40 and its southern end. Parts of the roadway have been obstructed by fruit trees and a hog pen. After 1962 Samuel sowed grass and used the northern end of the roadway as part of his front yard. Eventually, he fenced it off from Route 40, prompting appellees in 1970 to file their bill for an injunction to reestablish their access thereby to Lot 6.

Morton claims an easement for ingress and egress over the thirty-foot roadway because it was shown on a recorded map of the Dillard land, had been referred to as such in several deeds conveying the parcels adjoining it, had been used by him without objection for many years and because he has no other means of access to Lot 6. No deed specifically grants such an easement, and at trial Morton admitted that he was not relying on a specific grant, written or oral, from either his brother or the Dillards.

Where a grantor conveys land by deed describing it as bounded by a road or street, the fee of which is vested in the grantor, he implies that such way exists and that the grantee acquires the benefit of it. *Walters* v. *Smith*, 186 Va. 159, 169-70, 41 S.E.2d 617, 622 (1947); *Gish* v. *City of Roanoke*, 119 Va. 519, 531, 89 S.E. 970, 974 (1916).

The roadway existed at the time the Dillard property was sold in parcels. Although it was never dedicated or intended for public use, and the trial court so held, the roadway clearly was intended to serve the Dillard lands. When Dillard, Executor, severed those parcels from the remainder of the estate and described them as abutting the roadway, an easement of right of way over the roadway passed as appurtenant to each of those parcels. *See* 1 *Minor on Real Prop-*

*erty* § 99 (2d ed. F. Ribble 1928) (hereafter cited as *Minor*). Further division of the dominant tract by carving Lots 4 and 5 from Lot 3 does not necessarily impose on the servient tract an additional burden sufficient to constitute a surcharge. *Cushman Virginia Corp. v. Barnes*, 204 Va. 245, 253, 129 S.E.2d 633, 640 (1963); *Restatement of Property* § 488, comment *b* (1944). Indeed, counsel for appellants conceded in oral argument that when Morton owned Lots 4, 5 and 6 he had the right to use the roadway for the benefit of Lots 4 and 5, as these lots abutted the roadway. Although counsel contended that Morton did not so use the roadway and abandoned his right to use it, they admitted that if there was no abandonment, Morton could still use the roadway for the benefit of Lot 5, but not for the benefit of Lot 6.

■ We agree that the recorded map and deed descriptions do not give Morton the right to use the roadway to serve Lot 6. This lot was never part of the Dillard property and was never meant to be served by the roadway, which lay entirely within the confines of the Dillard lands and existed solely for the benefit of those lands. A landowner may lay off a private roadway along his property line without thereby entitling the adjoining landowner to use it.

The unavailability of other means of access to Lot 6, though a regrettable result of this family dispute, cannot bolster Morton's claim. No right of way by necessity may be claimed across the land of a stranger in title, and Lot 6 was never part of the Dillard lands. *See* 1 *Minor* § 98; *cf. Fones* v. *Fagan*, 214 Va. 87, —— S.E.2d —— this day decided. The evidence indicates that the Crook property, from which Lot 6 derives, was served by its own private road to Route 40. When Morton purchased Lot 6 without then having any direct access to Route 40, he may have been entitled to enforce a way of necessity or to infer an easement from a quasi-easement across the remainder of the Crook land. *See* 1 *Minor* §§ 98, 99. Moreover, Morton landlocked himself. By his own admission he purchased Lot 5 in 1948 to provide usable access to Lot 6. At the same time, he also owned Lot 4, and therefore had direct access from Lot 6 to Route 40 across his own property. But in 1949 he sold Lot 4, and began to use the thirty-foot roadway to serve property to which it was never appurtenant.

■ As counsel for appellees stated in oral argument, Morton's contention is that so long as he owns Lot 5, he may use the roadway to serve Lot 6 and any other properties of his connected to

Lot 6. But such a result, which would necessarily enlarge the burden on the original right of way, is impermissible. Morton may not add other properties to those entitled to use the roadway.

In *Clark* v. *Reynolds*, 125 Va. 626, 634, 100 S.E. 468, 470-71 (1919), we observed that the owner of an easement was not entitled to use it to benefit any place other than that for which it was originally established. Although *Clark* involved an easement by prescription, both the rule and the reasoning are applicable here since the scope of the easement, rather than the manner in which it was obtained, is the issue.

Other jurisdictions have reached the same conclusion. Where a farm in Kentucky, abutting the Tennessee state line, was subdivided into lots served by a preexisting farm road, the Kentucky Court of Appeals held that the owners of several lots served by the road could not use it to benefit their other property in Tennessee. Such use, the Court concluded, would impose an additional burden on the servient estate which was not intended in the grant. *Perkins* v. *Jones*, 215 Ky. 189, 190-92, 284 S.W. 1031, 1031-32 (1926). *See also Plunkett* v. *Weddington*, 318 S.W.2d 885 (Ky. 1958); *Beloit Foundry Co.* v. *Ryan*, 28 Ill.2d 379, 192 N.E.2d 384 (1963); *National Lead Co.* v. *Kanawha Block Co.*, 288 F. Supp. 357 (S.D. W. Va. 1968) *aff'd*, 409 F.2d 1309 (4th Cir. 1969).

The appellees also claim to have acquired by prescription an easement over the roadway for the benefit of Lot 6. The trial court declined to base its decision on this ground, and no cross-error was assigned by Morton to the ruling. To establish an easement by prescription the court would have to find that use by Morton was adverse, under claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the landowner for at least twenty years. *See Craig* v. *Kennedy*, 202 Va. 654, 657, 119 S.E.2d 320, 322-23 (1961). While the evidence indicated that Morton used the northern part of the roadway to reach Lot 5 and then Lot 6, the evidence as a whole tends to show that such use, until recently, was permissive, and was by no means continuous and uninterrupted.

The appellants argue that any easement which might have existed for the benefit of the appellees has been abandoned. Nonuse of an easement coupled with acts which evidence an intent to abandon or which evidence adverse use by the owner of the servient estate, acquiesced in by the owner of the dominant estate, constitutes aban-

donment. The burden rests upon the party claiming such abandonment to prove it by clear and unequivocal evidence. *Lindsey* v. *Clark*, 193 Va. 522, 525, 69 S.E.2d 342, 344 (1952). *See also Lipscomb* v. *Commins*, 212 Va. 543, 186 S.E.2d 74 (1972); 1 *Minor* § 109.

While the evidence shows that the southern portion of the roadway was rarely, if ever, used by Morton for access and that Samuel did use part of the roadway for purposes inconsistent with appellees' right of access, it also shows that the northern portion was used intermittently by Morton as long as the roadway remained open. We cannot say that the trial court was plainly wrong in finding that the roadway "was used to some extent" by Morton and his tenants from 1941 until it was blocked. This was a factual determination that we will not disturb.

The trial court held that Morton has a right to use the roadway, based upon his ownership of adjoining property, but it did not specify the extent of his right.

We conclude that Morton had the right to use the roadway as an easement appurtenant to Lot 5, as appellees have conceded. The finding of the lower court that this easement was not abandoned, being based on credible evidence, will not be disturbed. However, no easement of record was acquired for the benefit of Lot 6. As the record fails to support the existence of an easement for the benefit of Lot 6 by any other theory, we conclude that Morton did not acquire such an easement. Having never acquired an easement as to Lot 6, he has no right to increase the burden on the roadway as it serves Lot 5 by tacking Lot 6 to Lot 5.

Counsel for appellees argued that it would be difficult or impossible for a court to enforce a ruling that Morton has the right to use the roadway to serve Lot 5 but not to serve Lot 6. They say that to make the appellees trespassers whenever they cross the imaginary line between Lots 5 and 6 to use the roadway is unrealistic. But we do not accept difficulty of enforcement as a justifiable basis for determining reciprocal rights and duties. Accordingly, the decree of the trial court will be affirmed to the extent that it enjoined appellants from obstructing the use of the roadway by appellees to serve Lot 5 and will be modified to specify that any other use of the roadway by appellees will be prohibited.

*Affirmed in part; modified; and final decree.*