Present: Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ.

ROY HUDSON, ET AL.

v.  Record No. 000835  OPINION BY JUSTICE CYNTHIA D. KINSER
                                            March 2, 2001
RUTH M. PILLOW, ET AL.

FROM THE CIRCUIT COURT OF AMHERST COUNTY
Thomas A. Fortkort, Judge Designate


This appeal involves the question whether an old road known as the "Free Hollow Road" has been abandoned. That road ran through a farm known as "Rose Hill" and allegedly provided a means of ingress to and egress from a tract of land known as "Free Hollow." Because we find sufficient evidence to support the circuit court's judgment that the Free Hollow Road has been abandoned, we will affirm that judgment.

MATERIAL PROCEEDINGS

By deed dated November 25, 1865, and recorded in Amherst County, the Free Hollow tract of land, containing approximately 213 acres, was conveyed to 17 individuals pursuant to the terms of the will of Robert Tinsley. A portion of that tract is now owned by the appellants, Roy Hudson, Danny Melvin Carwile, and S. Vance Wilkins, Jr.,

(hereinafter referred to as "the plaintiffs").[1]  The Free

Hollow tract adjoins the Rose Hill farm.  The appellees,

Ruth Myra Richeson Pillow, and her husband, John L. Pillow;

and Nell Richeson Cordick and her husband, Leonard Eugene

Cordick (hereinafter referred to as "the defendants"), are

the owners of the Rose Hill farm (also referred to as "the

Richeson property").[2]

The plaintiffs filed a "Bill of Complaint and Motion

for Injunctive Relief," requesting that a right of way be

recognized across the defendants' property and an

injunction be issued to allow ingress to and egress from

the plaintiffs' property.  After hearing evidence and

viewing the property, the chancellor issued a letter

opinion.[3]  The chancellor found that no one has lived in

Free Hollow since the 1960's and that the Free Hollow Road

is overgrown with heavy brush and large trees, "accessible

---

[1] The plaintiffs acquired their respective portions of
the Free Hollow property primarily from the Commonwealth of
Virginia, after the parcels had been escheated to the
Commonwealth.

[2] The defendants acquired the Rose Hill farm from the
heirs and devisees of W. H. Richeson, Sr., in November
1989.  Ruth and Nell are granddaughters of W. H. Richeson,
Sr.

[3] At an _ore_ _tenus_ hearing, the chancellor made certain
findings from the bench and concluded that a right of way
does not currently exist across the Rose Hill farm.  The
plaintiffs then filed a motion to reconsider.  After

only by a determined pedestrian." The chancellor also found that Ramey Richeson, who formerly owned an interest in Rose Hill,[4] maintained control over the road, and locked the gates across it to prevent ingress and egress.

In a final decree incorporating the letter opinion, the chancellor made the following findings:

> The plaintiffs sustained their burden of proving a prescriptive easement over the old "Free Hollow Road" from Free Hollow to the location of present day State Route 714 near its intersection with State Route 615. However, clear and unequivocal evidence indicates non-use of the easement coupled with acts which indicate an intention to abandon or which evidence adverse use by the owners of the servient estate (Rose Hill) acquiesced in by owners of the dominant estate (Free Hollow) constituting abandonment of said old "Free Hollow Road."

Accordingly, the chancellor concluded that no easement presently exists from the Free Hollow tract across the Rose Hill farm and dismissed the bill of complaint. We awarded the plaintiffs this appeal.

### FACTS

The dispositive issue on appeal concerns the chancellor's finding that the easement across the Rose Hill farm has been abandoned. Thus, we will summarize the facts

---

hearing additional testimony, the chancellor issued his letter opinion.

[4] Ramey is one of the sons of W. H. Richeson, Sr. Ramey conveyed his interest in the Rose Hill farm to the defendants.

3

relevant to that issue, and in doing so, will present those facts, and all inferences fairly deducible from them, in the light most favorable to the defendants, the prevailing parties on that issue. Prospect Dev. Co. v. Bershader, 258 Va. 75, 80, 515 S.E.2d 291, 294 (1999).

Since the early 1960's, no one has resided on the Free Hollow property. According to Hugh A. Richeson, anyone who has traveled across the Richeson property to access the Free Hollow property since then has done so only after first getting permission from some member of his family.[5] Hugh's niece, Ruth Richeson Pillow, likewise stated that, in her lifetime, no one has used the old road across the Rose Hill farm to access Free Hollow without getting permission from her father, W. H. Richeson, Jr., or her uncle, Ramey Richeson.

Hugh further testified that, after his father died in 1962, his younger brother, Ramey, took over the farm and, sometime in the late 1960's, locked all the gates at the entrances to the Rose Hill farm. Hugh's sister, Sarah Richeson Gordon, also testified that the gates on the Rose Hill farm were locked after her father's death in 1962.

---

[5] Hugh is also one of the sons of W. H. Richeson, Sr. Hugh likewise conveyed his interest in the Rose Hill farm to the defendants.

Similarly, Ramey's daughter, Martha Richeson Preddy, stated that, during the years before she graduated from high school in 1966, the gates on the roads into Rose Hill from State Routes 615 and 714 were locked and that her father had the keys to the locks. She also remembered that the property was posted with "[n]o hunting" and "no trespassing" signs.[6] In fact, she and other members of the Richeson family testified that they had never heard of the term "Free Hollow Road" until this litigation commenced. Calvin Bailey, who owns a parcel in Free Hollow, also had not heard the name "Free Hollow Road." Bailey stated that he just knew about a farm road that ran through the Richeson property.

John L. Pillow, one of the defendants, testified that, when he and his wife purchased the Rose Hill farm in 1989, there were locks on the gates and that he has kept the gates locked continuously since then. He also stated that large trees, probably 25 to 50 years old, were located in the old roadbed and that, while some portions of the road were passable, other parts contained creeks and a beaver swamp.

---

[6] The defendants introduced receipts showing the purchase of locks in 1965, 1966, and 1975, and posted signs in 1969, by W. H. Richeson, Jr. He helped Ramey farm the Richeson property after W. H. Richeson, Sr., died.

5

Several witnesses testifying for the plaintiffs remembered using the road across the Rose Hill farm about 50 years ago for the purpose of cutting timber on the Free Hollow property. More recently, Chris Alfred Rose cut timber in Free Hollow for about three months in 1988. Rose stated that, during that time, he never saw any locks on the gates that were located on the road running through the Rose Hill farm to Free Hollow. Roy Hudson also testified that, when he first went onto the Free Hollow property around 1965, he did not see any locks on the gates leading into the Free Hollow Road. In fact, Hudson stated that he had not seen locks on the gates until he purchased a portion of the Free Hollow property in 1995.

S. Vance Wilkins, Jr., one of the plaintiffs, first purchased a tract of land in Free Hollow in 1966. Wilkins testified that, when he told Ramey Richeson about the purchase, Ramey volunteered to show Wilkins where the right of way across the Richeson property was located. According to Wilkins, Ramey drove him along the road and while doing so stated, "Here is where the right of way is. The old right of way used to be over here. This is what we use now. This is what you use." Wilkins denied getting permission from Ramey to use the road across the Rose Hill farm to access his property in Free Hollow and stated that,

6

when he went hunting on his property between approximately 1966 and 1986, the gate through which he entered the Free Hollow Road was not locked.

However, another witness, William Boyd Sale, testified that he asked Ramey for permission to travel across the Rose Hill farm when Sale was cutting timber in Free Hollow around 1987. Likewise, Harry B. Stinnett, Jr., confirmed that Ramey kept the gates locked and controlled access to the road across the Richeson property to Free Hollow.

## ANALYSIS

Before addressing the merits of the issue before us, we must consider the defendants' motion to dismiss this appeal. That motion is premised on the fact that the plaintiffs changed the wording of their assignments of error.[7] Because the original assignment of error number 2

---

[7] The assignments of error set forth in the petition for appeal were:

1. The trial court erred in finding that the Appellants bore the burden of proving that their use of the Free Hollow road continued in its historical or modified location, after the Court found that a right of way by adverse possession had been established by the Appellants.

2. The trial court erred in denying Appellants' Bill of Complaint for injunction relief seeking use of the Free Hollow road by holding that the Appellants did not meet their burden of proof regarding (a) abandonment by Appellants, (b) permissive use by Appellants or (c) adverse possession by the Appellees of Appellants' right of way.

and assignment of error number 1 on brief both raise the question whether there was sufficient evidence to support the chancellor's finding that the prescriptive easement over Free Hollow Road has been abandoned, we will deny the motion to dismiss as to that issue. Unlike the situation in Hamilton Dev. Co. v. Broad Rock Club, Inc., 248 Va. 40, 44, 445 S.E.2d 140, 143 (1994), the modification of this assignment of error has not enabled the plaintiffs to argue either a different question on appeal or an issue not presented to the chancellor. However, assignment of error number 2 on brief is entirely different than the original assignment of error number 4. Consequently, we will not consider that assignment of error.[8] See id.

---

3. The trial court erred in its finding of fact related to the testimony of Vance Wilkins and Chris Rose regarding permissive use.
4. The trial court erred in finding that the Appellants did not establish a right of way by necessity or implication.
5. The trial court erred in amending its Final decree to read "continued in a different location."

The assignments of error contained in the plaintiffs' brief are:
1. The trial court erred in finding that the prescriptive easement over Free Hollow Road has been abandoned.
2. The trial court erred by making no finding whether the Appellants established a right of way by necessity or implication.

[8] We also note that the plaintiffs have neither briefed nor argued their original assignments of error numbers 1,

We now turn to the dispositive issue before us, whether there was sufficient evidence to support the chancellor's finding that the prescriptive easement over the Free Hollow Road has been abandoned. In addressing that issue, we are guided by the following principles of appellate review. The chancellor's decision, reached after hearing evidence <u>ore</u> <u>tenus</u> and resolving conflicts in that evidence, carries the same weight as a jury's verdict, and the chancellor's findings of fact will not be disturbed on appeal unless they are plainly wrong or without evidence to support them. Code § 8.01-680; <u>Rash v. Hilb, Rogal & Hamilton Co.</u>, 251 Va. 281, 283, 467 S.E.2d 791, 793 (1996); <u>Cushman Virginia Corp. v. Barnes</u>, 204 Va. 245, 254, 129 S.E.2d 633, 640 (1963); <u>Rogers v. Runyon</u>, 201 Va. 814, 816, 113 S.E.2d 679, 680 (1960).

The party claiming abandonment of an easement, in this case the defendants, has the burden to establish such abandonment by "clear and unequivocal evidence." <u>Robertson v. Robertson</u>, 214 Va. 76, 82, 197 S.E.2d 183, 188 (1973) (citing <u>Lindsey v. Clark</u>, 193 Va. 522, 525, 69 S.E.2d 342, 344 (1952)). "Nonuse of an easement coupled with acts which evidence an intent to abandon or which evidence

3, and 5. Thus, we will not consider them. <u>Jenkins v. Commonwealth</u>, 244 Va. 445, 451, 423 S.E.2d 360, 364 (1992).

9

adverse use by the owner of the servient estate, acquiesced in by the owner of the dominant estate, constitutes abandonment."[9]  Robertson, 214 Va. at 81, 197 S.E.2d at 188; accord Pizzarelle v. Dempsey, 259 Va. 521, 528, 526 S.E.2d 260, 264 (2000).  If the party asserting abandonment relies upon nonuse of the easement coupled with an adverse use by the owner of the servient estate, that adverse use must continue for a period of time sufficient to establish a prescriptive right.  Lindsey, 193 Va. at 525, 69 S.E.2d at 344 (citing Watts v. C.I. Johnson & Bowman Real Estate Corp., 105 Va. 519, 525, 54 S.E. 317, 319 (1906)).  However, mere nonuse will not suffice to establish an abandonment.  Id.

The plaintiffs argue that, while the use of the Free Hollow Road over the Rose Hill farm was sporadic after the 1960's when the last resident left Free Hollow, there was never a cessation of that use.  They also contend that the record is devoid of any evidence of an intent to abandon the easement and that, while the chancellor may have found an adverse use of the easement by the defendants, the evidence was not "unequivocal" on that issue.  Thus, the plaintiffs assert that the defendants did not prove, by

_____

[9] In the Restatement (Third) of Property § 7.7 (2000), the adverse use of an easement by a servient owner is

10

clear and unequivocal evidence, an abandonment of the prescriptive easement over the Richeson property to Free Hollow. We do not agree with the plaintiffs.

The evidence before the chancellor was disputed with regard to the issue of abandonment. The chancellor resolved those conflicts and concluded that the road has been in disuse for many years, as reflected by the overgrowth of brush and large trees in the roadway. The chancellor further found that, after 1962, the gates through which anyone using the Free Hollow Road would have had to pass in order to travel over the Richeson property to Free Hollow have been locked, and that individuals using the road did so only with the permission of the owners of the Richeson property. Upon our review of the record, we cannot say that the chancellor's findings are plainly wrong or without evidence to support them. Those findings establish an abandonment, i.e., nonuse of the easement coupled with acts by the servient owners that were "inconsistent with," or adverse to, "the future enjoyment" of the easement by the dominant owners for a period of time sufficient to create a prescriptive right. Scott v. Moore, 98 Va. 668, 686, 37 S.E. 342, 348 (1900); see also Pizzarelle, 259 Va. at 530, 526 S.E.2d at 265 (placement of

referred to as "extinguishment by prescription."

11

fence, trees, and shrubs in easement reflect intent to adversely use easement for purpose other than ingress and egress).  Thus, we will not disturb the chancellor's decision.  Rash, 251 Va. at 283, 467 S.E.2d at 793.

Nevertheless, the plaintiffs argue that permission, or lack thereof, to use the Free Hollow Road is irrelevant to the question whether a prescriptive easement, already established, has been abandoned.  The plaintiffs contend that permission goes to the creation of a prescriptive easement and that, once such an easement has been established, the question of permission is moot.  We do not agree.  Once a prescriptive easement has been created, if the servient owners then start requiring permission to use that easement, as was done in this case, that requirement is indicative of a measure of control over the easement that is adverse to the enjoyment of the easement by the dominant owners.  Furthermore, the chancellor did not base his finding of abandonment solely on the question of permission.

The plaintiffs also assert that the chancellor rested his decision, in part, on the fact that portions of the Free Hollow Road had been changed.[10]  In the letter opinion,

_____

[10] The evidence showed that the entrance to the Free Hollow Road had been relocated, the original gate had been

12

the chancellor discussed the "new" road.  However, in the final decree, the chancellor found "clear and unequivocal evidence . . . constituting abandonment of said old 'Free Hollow Road.' "  That is the issue before us.  While the chancellor also found in the final decree that "[t]he plaintiffs have not sustained their burden showing that the right of way continued in a different location," that issue was contained in one of the plaintiffs' assignments of error that they failed to brief or argue.  See note 8, supra.

For these reasons, we will affirm the judgment of the circuit court.[11]

Affirmed.

JUSTICE LEMONS, concurring.

The discrepancy between the trial court's letter opinion and its Final Decree creates confusion in the resolution of this case.  The evidence in this case concerns two separate roads, the "old Free Hollow Road" and a deviation from that easement, variously called the "new road" or the "farm road."

In its Final Decree, the trial court found that:

---

replaced with a fence, and the course of the road had been changed in one place.

[11] In light of our decision, we do not reach the assignments of cross error.

13

4. The plaintiffs sustained their burden of proving a prescriptive easement over the old "Free Hollow Road" from Free Hollow to the location of present day State Route 714 near its intersection with State Route 615. However, clear and unequivocal evidence indicates non-use of the easement coupled with acts which indicate an intention to abandon or which evidence adverse use by the owners of the servient estate (Rose Hill) acquiesced in by owners of the dominant estate (Free Hollow) constituting abandonment of said old "Free Hollow Road."

5. The plaintiffs have not sustained their burden of showing that the right of way continued in a different location.

By contrast, in its letter opinion, referring to the changed location, the trial court stated, "[i]t is the Court's finding that no easement was created by the occasional use of this road by persons who had the permission of the owner." At the heart of this confusion is the failure to clearly distinguish between moving an existing easement and creating a new easement, and the

14

corollary problem of identifying which path of the easement, old or new, is the focus of proof of abandonment.

The majority opinion correctly points out that we review the judgment of the trial court which found abandonment of the "old Free Hollow Road," and no establishment of Hudson's right to utilize the "new road." Most of Hudson's evidence on the subject is related to lack of abandonment of the new road. Unfortunately, the trial court relied upon and cited evidence concerning both roads to support its conclusion of abandonment of the old road.

The burden of proof of abandonment of an existing easement lies upon the party claiming the abandonment and must be established by "clear and unequivocal" evidence.

> Nonuse of an easement coupled with acts which evidence an intent to abandon or which evidence adverse use by the owner of the servient estate, acquiesced in by the owner of the dominant estate, constitutes abandonment. The burden rests upon the party claiming such abandonment to prove it by clear and unequivocal evidence. Lindsey v. Clark, 193 Va. 522, 525, 69 S.E.2d 342, 344 (1952). See also Lipscomb v. Commins, 212 Va. 543, 186 S.E.2d 74 (1972); 1 Minor [on Real Property § 109 (2d ed. F. Ribble 1928)].

Robertson v. Robertson, 214 Va. 76, 81-82, 197 S.E.2d 183, 188 (1973).

15

The evidentiary standard of "clear and unequivocal" requires a different level of proof than the more familiar standard of "clear and convincing."  Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975).  "Clear and unequivocal" is at least as high a standard of proof as that of "beyond a reasonable doubt," if not higher.  See Addington v. Texas, 441 U.S. 418, 432 (1979)(noting that "[t]he term 'unequivocal,' taken by itself, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases").  Moreover, as we said in Pizzarelle v. Dempsey, 259 Va. 521, 529, 526 S.E.2d 260, 264 (2000), the evidence is not unequivocal unless it is "free from uncertainty."

While the evidence of abandonment of the "old Free Hollow Road" is, as the majority correctly states, sufficient to satisfy the heightened evidentiary burden, if the issue were the abandonment of the "new road," I would find the evidence insufficient.  However, the trial court's Final Decree recites that "[t]he plaintiffs have not sustained their burden showing that the right of way continued in a different location."  From this determination, there is no assignment of error before us.

The burden of proving abandonment of the easement by clear and unequivocal evidence is upon Pillow.  The burden

16

of proving movement of the easement by the preponderance of the evidence is upon Hudson.  These are distinct issues, both of which are addressed in the trial court's judgment; however, only the former is before us on appeal.

Because both the trial court and the majority opinion mix proof of abandonment of both roads, I write separately to distinguish precisely the narrow issue before us on appeal, and emphasize that the heightened burden of proof was met only as to this narrow issue.