Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Russell, S.J.

THE BARTER FOUNDATION, INC., ET AL.

OPINION BY
v.  Record No. 022409  JUSTICE LAWRENCE L. KOONTZ, JR.
January 16, 2004

GORDON L. WIDENER, ET AL.

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Charles B. Flannagan, II, Judge

In this appeal, we consider the rights of owners of land with respect to an adjoining undeveloped parcel that was dedicated for use as a public street in 1944, but which has never been formally accepted by the governing public authority.

BACKGROUND

On April 22, 1940, Investors Service Corporation conveyed to Benson S. Alleman a 50-acre tract in the Town of Abingdon (the Town) that formerly had been a portion of the land owned by, and containing the buildings of, Stonewall Jackson College.[1] Alleman subdivided two sections of that property by separate plats in May and June of 1943 respectively. These platted subdivisions were designated as "White Addition No. 1" and "White Addition No. 2." The certificates filed with the plats when both were recorded in the land records of Washington County

_____

[1] Although the property was deeded to Alleman, both Alleman and his wife executed the subsequent subdivision certifications and conveyances related to this property. We will refer to both parties as "Alleman" hereafter.

provide that they "shall operate to create a public easement or right of passage over said portion of the premises platted, as is on this plat set apart for streets, or other public use."[2]

On May 25, 1944, Alleman recorded a plat and certificate showing the subdivision of the remaining section of the property, designating this subdivision as the "College Building Tract." The plat depicted seventy lots numbered consistent with the scheme used to identify the lots depicted on the White Addition No. 1 and No. 2 subdivision plats. The plat also depicted a large unnumbered lot containing four former college buildings. As did the certificates for the first two platted subdivisions, the certificate accompanying the College Building Tract subdivision plat stated that it "shall operate to create a public easement or right of passage over said portion of the premises platted, as is on this plat set apart for streets, or other public use."

The College Building Tract subdivision plat depicts Court Street, an existing public street on the western edge of the property, and a portion of "White Avenue," a proposed street that appears on the White Addition No. 1 subdivision plat and

_____

[2] The two plats depict existing public streets that were not part of the property Alleman acquired in 1940 as well as proposed streets that were the subject of the "public easement

2

which is today known as "White Street."  In addition, the plat depicts three other streets, two of them being forty feet wide and the other twenty-five feet wide.  One of the forty foot wide streets connects with White Avenue and runs north between lot 120 and lots 20 to 24, and then east between the lot containing the college buildings and lots 120 to 137.  This street, currently known as "Barter Drive," has been accepted by the Town and has been widened to forty-five feet as the result of a subsequent dedication.  Barter Drive has been partially paved and opened to public use.  The end of Barter Drive is maintained by The Barter Foundation, Inc. and is used as a parking area.

The other forty foot wide street depicted on the College Building Tract subdivision plat runs south from the eastern end of Barter Drive between lot 137 and lot 99 to an intersection with White Avenue.  As with Barter Drive, a subsequent dedication of an additional five feet to the right-of-way increased the width of the street to forty-five feet.  However, this street has not been paved or otherwise opened to public use and remains in a more or less natural state, being covered with grass and trees.

The twenty-five foot wide street depicted on the College Building Tract subdivision plat, which is the property at issue

_____

or right of passage" granted in the certificates accompanying

in this appeal, runs north from the intersection of the two forty foot wide streets along the eastern boundary of the lot containing the four college buildings, terminating at the southern boundary of lot 139 as shown on the White Addition No. 2 subdivision plat. This proposed street has never been accepted formally by the Town. With the exception of the creation of a "Shakespearean Garden" maintained by a garden club at one point along its route, the street has remained undeveloped and in a more or less natural state to the present day.

On May 25, 1944, the same day that the College Building Tract subdivision plat was recorded, Alleman conveyed to S. H. Rivers the lot containing the four college buildings. The metes and bounds description of the lot in the deed and the depiction of the lot on an incorporated plat establish that the conveyance did not include the area designated as the twenty-five foot wide street.[3]

On October 17, 1945, Rivers conveyed a portion of his property to E. A. Hines. As described in the deed and depicted

the plats.
[3] See the attached copy of an excerpt from a 1944 plat that was incorporated in the Alleman/Rivers deed. We have altered this plat to highlight the disputed street and to generally identify the various locations of the properties of the parties with respect to that street and other streets referenced in

4

on an incorporated plat, the southeast corner of the property acquired by Hines was located at the intersection of Barter Drive and the twenty-five foot wide street. The deed also references the plat incorporated in the Alleman/Rivers deed, stating that "[i]t is understood between the parties hereto that the streets as shown on said plat . . . have been dedicated for the purpose of and are public streets for the use of the owners of said lots described on said plat . . . and the public generally." Subsequent conveyances of this property make reference to the twenty-five foot wide street and contain language similar to that in the Rivers/Hines deed indicating that it has been dedicated as a public street.

Through this chain of title, The Barter Foundation, Inc. ultimately became the owner of the property containing the four college buildings formerly owned by Alleman and lying west of the twenty-five foot street. Mary Dudley Porterfield and Gordon L. Widener are the owners of the properties lying east of the twenty-five foot wide street.[4] It is undisputed that the

---

various deeds and plats. It is intended only as a general schematic depiction.

[4] Widener's son, Christopher D. Widener, daughter, Karen W. Koontz, and son-in-law, Thomas F. Koontz, also have an interest in his property and were named as parties to the suit from which this appeal arises and are parties to this appeal. However, "Widener was treated by the parties for the purposes of this litigation as the equitable owner of [their] property."

properties lying east of the twenty-five foot wide street were not part of the property acquired by Alleman in 1940, and none of these properties are landlocked such that they would require use of the twenty-five foot wide street for ingress and egress.

A plat prepared for Widener of his property in January 1996 shows the street in question as "(25' STREET UNDEVELOPED)" along his property's western edge. This plat also indicates that the two forty foot wide streets have been widened to forty-five feet as the result of a "5' DEDICATION OF STREET TO TOWN OF ABINGDON."

On June 7, 1999, Widener received a letter from Graham M. Newman, Abingdon Town Manager, confirming an earlier conversation between Widener and Newman concerning Widener's desire "to make the [twenty-five foot wide street] right-of-way useable to access [his] property." Newman indicated that the Town had no objection to Widener's request to "mow the right-of-way, remove some trees and stumps (clearing and grubbing) and [undertake] minor leveling of the grade . . . as long as it is done reasonably, without creating a nuisance." Newman further stated, however, that "the right of way in question has not been

Accordingly, for convenience, we will refer to these parties collectively as "Widener."

6

opened by the Town to public use and has not been accepted by the Town for maintenance purposes."

On November 10, 1999, The Barter Foundation, Inc. and Mary Dudley Porterfield (collectively, Barter) filed an amended bill of complaint against Widener and the Town seeking a determination that the dedication of the proposed twenty-five foot wide street has been abrogated through lack of use by the public, and that as a result "Barter is the owner of the real property free and clear of the proposed easement." Barter further sought a permanent injunction prohibiting Widener from "entering or damaging" the property.[5]

Widener filed an answer to the bill of complaint asserting essentially that Barter could not claim ownership of the disputed property because it was estopped to do so by language in the deeds in its chain of title acknowledging the dedication of the property as a public right-of-way. Widener further asserted that the Town owned the disputed property because it

---

[5] Alternately, Barter asserted that Widener could not undertake the proposed clearing of the twenty-five foot wide street because such action was contrary to certain provisions of the Code of the Town of Abingdon regarding the opening of previously unopened rights-of-way. This assertion does not impinge upon our resolution of this appeal and, accordingly, we express no opinion thereon.

had accepted the dedication of all the proposed streets depicted on the College Building Tract subdivision plat.[6]

On August 29, 2001, following an extended period of discovery, the chancellor conducted an _ore_ _tenus_ hearing at which evidence in accord with the above-recited facts was received from a land surveyor, Town officials, the parties, and other witnesses. In addition, the chancellor heard evidence concerning use of the twenty-five foot wide street by the public over the last sixty years. Specifically, Widener testified that his father-in-law "used to use it to go to work" in the 1960s. Widener's wife testified that in her youth she and other children would walk to school over the street and that automobiles sometimes would drive over it.

In a final decree dated July 16, 2002, the chancellor found that the Alleman plats "were a dedication to the public of all the streets shown thereon." Based upon the evidence and a view taken of the property, the chancellor further found that "although . . . Barter Drive and the street extending from Barter Drive to White Street have been accepted by the Town of Abingdon, the Town has not accepted the dedication of the

---

[6] The Town did not file an answer, although counsel for the Town participated in the subsequent proceedings. Counsel stated that "[t]he Town does not favor one party over the other in this action." The Town is also a party to this appeal, but did not file a brief.

subject 25 foot [wide] street." However, in part based on the wording of the certificate filed with the College Building Tract subdivision plat, the chancellor also found that "a public right of way or easement . . . exists separately and independently from whether the Town has accepted the dedication" and, thus, "the Wideners and . . . other members of the public have and own a right of way or easement to travel across and use the said 25 foot [wide] street as a public way." Accordingly, the chancellor decreed that Barter did not "own the fee simple title to the 25 foot [wide] street . . . set out in the Alleman plat," decreed that Barter's requested injunctive relief was "without merit," and dismissed Barter's bill of complaint "with prejudice."

We awarded Barter this appeal and also accepted an assignment of cross-error raised by Widener.

DISCUSSION

For its part, Barter contends that the chancellor erred in finding that there can be a right-of-way or easement over the twenty-five foot wide street in favor of the public in the absence of an acceptance of the dedication of that right-of-way by the Town. Barter further contends that the chancellor erred in failing to find that the dedication of the street in question has been abandoned and, as a result, that Barter has become the fee simple owner of the property. Widener, by assignment of

cross-error, contends that the chancellor erred in not finding that the Town had accepted dedication of the twenty-five foot wide street by implication.  We will consider the assignment of cross-error first, because a determination that there has been an acceptance of the dedication by implication would moot the remaining issues of the appeal.

The parties do not challenge the chancellor's finding that Alleman's 1944 recorded plat and certificate for the subdivision of the College Building Tract constituted a dedication to the public of all the streets depicted thereon.  The record is unclear, however, whether the chancellor considered that dedication to be in compliance with the statutory scheme applicable to such dedications in 1944 or whether the chancellor considered the dedication to be governed by common law.  For purposes of our resolution of the issue raised by Widener upon cross-error, the distinction is not critical.  Fundamental and long established principles regarding land conveyances under the then applicable statutory scheme or the common law make this clear.

Because a definite and certain grantee was required in order to take land by conveyance or grant at common law, a landowner could not effectively convey or grant an interest in his land to the general public as grantee.  However, in order to facilitate the creation of public streets and other public areas

for the benefit of the general public, the doctrine of dedication evolved and recognized the rights acquired by the public by estopping the dedicator from disputing those rights. Payne v. Godwin, 147 Va. 1019, 1024-25, 133 S.E. 481, 482-83 (1926).  We have explained in numerous cases that:

> "Dedication, at common law, was a grant to the public, by a landowner, of a limited right of use[] in his land.  No writing or other special form of conveyance was required; unequivocal evidence of an intention to dedicate was sufficient.  Until the public accepted the dedication, it was a mere offer to dedicate."

Brown v. Moore, 255 Va. 523, 529, 500 S.E.2d 797, 800 (1998) (quoting McNew v. McCoy, 251 Va. 297, 299, 467 S.E.2d 477, 478 (1996)).  We have further explained that:

> Prior to acceptance, the offer to dedicate imposed no responsibilities upon the public and was subject to unilateral withdrawal at any time by the landowner. Acceptance could be formal and express, as by the enactment of a resolution by the appropriate governing body, or by implication arising from an exercise of dominion by the governing authority or from long continued public use[] of requisite character.

Brown v. Tazewell County Water & Sewerage Auth., 226 Va. 125, 129-30, 306 S.E.2d 889, 891 (1983).

In Brown, we recounted the legislative history of a series of laws enacted since 1887 relating to dedications of streets and other public areas within platted, recorded subdivisions. We noted that under the statutory scheme applicable in 1944 the acknowledgement and recording of a properly approved subdivision plat operated "to create a public easement or right of passage

11

over streets shown on the plat." Id. at 130, 306 S.E.2d at 891;

see also Code (1942) § 5219 (providing that the acknowledgement

and recording of a plat complying with Code (1942) § 5217 is

equivalent to a deed in fee simple). However, we stressed that

"although such 'dedication by map' was irrevocable by the

dedicator, the rights of the public were merely inchoate, and

that the dedication was not complete until accepted by competent

public authority."[7] Id. at 130, 306 S.E.2d at 891.

In view of these principles, the critical question to our

resolution of the issue raised by Widener's cross error is

whether the evidence established that the Town has manifested an

intent to accept the dedication of the property at issue as a

public street. Whether there has been a sufficient

manifestation of such intent is a mixed question of law and

fact. When reviewing the judgment of a chancellor upon such an

issue, we review the application of the law de novo, while

giving deference to the chancellor's factual findings. See

Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).

The record supports the chancellor's finding that the Town

has not formally accepted Alleman's dedication of the twenty-

five foot wide street depicted in the College Building Tract

---

[7] The current statutory scheme for the recordation of plats dedicating land for public streets is contained in Code § 15.2-2265.

12

subdivision plat and referenced in the certification.  Widener, relying on Ocean Island Inn v. City of Virginia Beach, 216 Va. 474, 479, 220 S.E.2d 247, 252 (1975), contends that the Town should be deemed to have accepted the dedication of that street because the chancellor found that the Town had accepted the two forty foot wide streets, thus manifesting an intent to accept all the streets depicted on the plat.

The doctrine of implied acceptance of a dedication of property for public use provides that:

> where a governing body has accepted part of the streets appearing on a recorded plat and no "intention to limit the acceptance" is shown, such partial acceptance constitutes acceptance of all of the streets, provided the part accepted is sufficiently substantial to evince an intent to accept the comprehensive scheme of public use[] reflected in the plat.

Id. (quoting Virginia Hot Springs Co. v. Lowman, 126 Va. 424, 435, 101 S.E. 326, 330 (1919) and Village of Lee v. Harris, 69 N.E. 230, 232 (Ill. 1903)).

However, in Ocean Island Inn, and in other cases where we have considered whether there was an acceptance by implication of an offer of dedication, the evidence was not merely that the governing authority had accepted some of the property offered for dedication, but rather that there had been "an 'exercise of jurisdiction and dominion' by the governing authority" over the property dedicated to the public, such as the paving of streets

13

or installation and maintenance of public utilities.  Id. at 477, 220 S.E.2d at 250 (quoting Staunton v. The Augusta Corporation, 169 Va. 424, 436, 193 S.E. 695, 699 (1937)); see also, Greenco Corp. v. City of Virginia Beach, 214 Va. 201, 208-09, 198 S.E.2d 496, 501-02 (1973); City of Richmond v. Gallego Mills Co., 102 Va. 165, 171, 45 S.E. 877, 879 (1903).  We are of opinion that the evidence in the present case does not rise to the level necessary to find an acceptance by the Town of the dedication of the twenty-five foot wide street by implication.

The evidence showed that of the three streets dedicated to public use on the 1944 plat of the College Building Tract, only Barter Drive has actually been opened to public use, and the Town maintains only a portion of that street.  Barter has not challenged the chancellor's finding that the dedication of the other forty foot wide street has been accepted by the Town, and, for purposes of this appeal, we accept that finding.  However, the evidence further showed that this street has never been paved or otherwise opened to public use, and this property remains in a more or less natural state.  By contrast, there was express testimony from Town officials that the Town had not accepted dedication of the twenty-five foot wide street.  Under these facts, placing the burden of maintenance and liability of ownership on the Town by finding an acceptance of the dedication of the twenty-five foot wide street by implication is not

14

warranted.  Accordingly, we hold that the chancellor correctly ruled that the Town has not accepted the dedication in the 1944 College Building Tract subdivision plat of this street.

We then must consider Barter's assignments of error. Initially, Barter asserts that the chancellor erred in finding that the dedication of the twenty-five foot wide street depicted on the 1944 College Building Tract subdivision plat created a right-of-way to travel across and use that property as a public way in favor of the general public even in the absence of the acceptance of that dedication by the Town.  We disagree.

Barter's assertion fails to distinguish between a right of passage over a platted street which inures to the benefit of the general public and a platted street which becomes a public street or highway upon acceptance by the governing body of the jurisdiction in which the platted street is located.  This distinction is significant.  As we have explained above, whether at common law or by the then applicable statutory scheme, a street dedicated by plat to public use did not impose the duty of maintenance or potential liability upon the governing body until that dedication was accepted by the governing body. Nevertheless, the general public could accept the dedication by use of the right of passage granted by the dedicator.  It was in this context, that we stated in Payne that dedication by plat of a street "is an inchoate right vested in the public, and the

15

street . . . does not become a highway until established or accepted by competent authority." Payne, 147 Va. at 1026, 133 S.E. at 483.

There can be no question, and the parties do not dispute, that Alleman intended to dedicate the property in question as well as the other areas depicted as streets on the 1944 College Building Tract subdivision plat to be used for public streets. In addition, the fact that Alleman did not convey the property comprising the streets when he sold the adjoining property shows that he intended, and undoubtedly presumed, the Town would accept the dedication of that property and use it as streets open to public use. Because the Town did not do so with regard to the twenty-five foot wide street, that property never became a public highway for which the Town assumed the duty to maintain. Nevertheless, the general public had the right to use the property for passage in accord with the expressed intent of Alleman's certificate and plat. The record reflects such use by the public, although it was infrequent.

We next consider Barter's contention that the chancellor erred in failing to find that the dedication of the street in question has been abandoned. The essence of Barter's position is that, because the Town has not accepted the 1944 dedication of this street and the general public has not used the right-of-way for an extended period of time, the dedication should be

16

deemed abandoned through nonuse even without a court proceeding to confirm that abandonment has occurred.[8]

The abandonment of an offer to dedicate property to public use may be proven in the same manner as the abandonment of an easement.  See Magee v. Omansky, 187 Va. 422, 430-31, 46 S.E.2d 443, 448 (1948).  "The party claiming abandonment of an easement . . . has the burden to establish such abandonment by clear and unequivocal evidence.  Nonuse of an easement coupled with acts which evidence an intent to abandon . . . constitutes abandonment . . . .  However, mere nonuse will not suffice to establish an abandonment."  Hudson v. Pillow, 261 Va. 296, 302, 541 S.E.2d 556, 560 (2001) (internal quotations and citations omitted).

---

[8] Relying on our holding that when such an abandonment is found and "the dedicator does not reserve or dispose of the fee in the street, it vests in the purchasers of the abutting lots," Payne, 147 Va. at 1025, 133 S.E. at 483, Barter further contends that, because it is the only adjoining landowner in privity of title with Alleman, the chancellor should have found that Barter is vested with fee simple title to the property of the proposed twenty-five foot wide street.  Because of the view we take that Barter failed to carry its burden to establish that the dedication has been abandoned, we need not address the applicability, if any, of this proposition articulated in Payne to the determination of the fee title of this property had abandonment of the dedication been established.  Moreover, because we are unable to determine from the record whether the 1944 plat complied with the then applicable statutory scheme for dedication of streets, we are unable to determine the fee title of the disputed property in this proceeding, and it is unnecessary that we do so.

While the Town has not accepted the dedication of the twenty-five foot wide street, either by formal resolution or by implication, it does not necessarily follow that the Town has abandoned the offer of dedication of that property. To the contrary, the evidence showed that the Town was aware of the offer of dedication and, although it had "not been accepted by the Town for maintenance purposes," nonetheless considered the property to be an "unopened right[]of way . . . useable to access" the adjoining property. Indeed, it exercised a degree of dominion and control over the property by requiring its permission for Widener to clear the right-of-way for his use. In other words, the Town recognized both the public's present right of passage over the twenty-five foot wide street under the language of the certification filed with the 1944 College Building Tract subdivision plat and the Town's inchoate right to open the right-of-way at some future date by assuming a duty to maintain the property as a public street. We hold that this evidence is sufficient to establish that the Town has not abandoned the offer of dedication.

Additionally, we do not find that the evidence in this case would support a finding that the public's right of passage has been abandoned. Although the evidence in this record of actual use by the general public of the disputed street over many years is slight, "mere nonuse will not suffice to establish an

18

abandonment." Id. The chancellor viewed the property and we can assume that no substantial changes or uses of the property inconsistent with a right of passage were revealed by the view.

The record also shows that every deed relating to the adjoining property expressly mentions the existence of the right-of-way for public use, thereby confirming the original grant of that right by the 1944 College Building Tract subdivision plat and certification. Similarly, every plat in the record depicting the environs shows the property as a public right-of-way. Thus, the evidence does not support a finding of "acts which evidence an intent to abandon," Hudson, 261 Va. at 302, 541 S.E.2d at 560, but to the contrary show a continuing recognition of the existence of the public's right-of-way. We hold that under these circumstances, Barter, which had the burden to do so, failed to show by clear and unequivocal evidence an abandonment of the public's right to use the property.

CONCLUSION

For these reasons, we will affirm the chancellor's decree reflecting the findings that although the Town has not accepted dedication of the twenty-five foot wide street, neither has that dedication been abandoned and, thus, Barter has not acquired fee simple ownership of the property, and the Wideners and the

19

general public have a right-of-way or easement to use that property as a public way.

Affirmed.

SUBDIVISION of a PORTION
of the
STONEWALL JACKSON
COLLEGE PROPERTY
SCALE — 1" = 100'

Now owned
by Porterfield

Now owned
by Widener

Undeveloped
Forty Foot Wide
Street
(Accepted by
Town)

Lot 99

STREET

Now owed
by Barter

Parking Area
(Maintained
by Barter)

Lots
120-137

AUD.

DORM.

Barter Drive
(Maintained
By Town)

GYM.

Lots
20-24

Lots
15-19

White
Street

COURT STREET

21