Present:  All the Justices

THOMAS M. HELMS, ET AL.

v.  Record No. 072306                OPINION BY
                          CHIEF JUSTICE LEROY ROUNTREE HASSELL, SR.
JAMES L. MANSPILE, ET AL.        January 16, 2009

            FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                    Malfourd W. Trumbo, Judge

                                I.

      In this appeal the primary issue we consider is whether

alleged owners of real estate established as a matter of law

that they own title to a parcel of land by adverse possession.

                                II.

      James L. Manspile and Sheri N. Graham (the Manspiles)

filed a complaint against Thomas M. Helms, Barbara S. Helms,

and others.  The Manspiles sought a declaration that they own

an easement that transverses land owned by the Helms.  The

Helms filed a counterclaim and, among other things, sought an

adjudication that they own a "102-feet" tract of land,

described as Parcel 2, by adverse possession.

      At the conclusion of a bench trial, the circuit court

held that the Manspiles did not have an easement over the

Helms' property and had an easement existed, it had been

abandoned.  The circuit court also ruled that the Helms failed

to establish their claim of ownership of Parcel 2 by adverse

possession.

III.

The relevant facts necessary to our resolution of this appeal are not in dispute.  The Helms and the Manspiles own adjoining tracts of land in Botetourt County.  The Helms purchased their land in 1972.  Their expert witness testified that the Helms' property consists of two parcels:  Parcel 1 which is not pertinent to this appeal; and Parcel 2, which is a rectangular strip of land 102 feet in length.  The actual boundary line between the Helms' property and the Manspiles' property could not be determined because the descriptions in the deeds in both the Manspiles' and the Helms' chains of title are inadequate to permit a surveyor to ascertain the property line.

When the Helms purchased their property in 1972, the property was enclosed within a fence.  They considered the fence, which extended along the northern border of the 102-feet parcel, as the boundary for their property.  Their land was "mostly cleared" and contained "second growth timber."

An old barbed wire fence, that extended along the northern boundary of Parcel 2, had existed for over 50 years. In 1998 or 1999, the Manspiles, with the Helms' permission, replaced the old barbed wire fence with a new fence and the Manspiles erected the new fence in the same location where the old fence had been located.

The Helms' predecessors in title kept cattle that grazed on Parcel 2. They also kept a milk cow and a horse on the enclosed Parcel 2. The Helms' predecessors in title had erected buildings on Parcel 2, including a "smokehouse" that had been built over 65 years ago.

Since 1972, Thomas Helms used a tractor to clear "brush off" of Parcel 2. He also maintained dog kennels on Parcel 2. The Helms constructed a "skid road" and hauled timber on Parcel 2. On one occasion, Thomas Helms asked the Manspiles for permission to "haul timber" across their property. The Manspiles refused to grant permission, so Helms transported the timber across Parcel 2. James Manspile testified at trial that he did not believe he had any right to prevent Helms from hauling timber across Parcel 2.

The Helms testified that beginning with their purchase of the property in 1972, they treated Parcel 2 as their property. James Manspile thought that the Helms owned Parcel 2 because "[j]ust over time [Thomas Helms] had cleared brush and had cut wood and different things on that property. The fence never was no further. So in my knowledge, being 31 years old, I didn't figure it went any further." The Manspiles did not assert any claim of ownership of Parcel 2 until the commencement of this litigation.

IV.

3

The Helms contend that they proved by clear and convincing evidence that they own the title to Parcel 2 by adverse possession. Responding, the Manspiles assert that this Court should dismiss the Helms' appeal because they did not object to the circuit court's rulings. Continuing, the Manspiles argue that the Helms failed to establish that they had title to Parcel 2 by adverse possession. We disagree with the Manspiles' contentions.

At the conclusion of the presentation of evidence at trial, the circuit court directed the litigants to submit written memoranda of law that included their closing arguments. The Helms submitted their memorandum that included, among other things, their contention that they owned Parcel 2 by adverse possession. After the circuit court reviewed the memoranda submitted by counsel for the litigants, the circuit court issued a letter opinion that embodied its rulings. Subsequently, the circuit court entered an order that incorporated its letter opinion by reference. Counsel for both litigants endorsed the order as "seen."

We hold that the Helms preserved their right to challenge on appeal the circuit court's ruling on adverse possession. Code § 8.01-384(A) states:

> "No party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his

right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court. No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order. Arguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal."

Once a litigant informs the circuit court of his or her legal argument, "[i]n order for a waiver to occur within the meaning of Code § 8.01-384(A), the record must affirmatively show that the party who has asserted an objection has abandoned the objection or has demonstrated by his conduct the intent to abandon that objection." Shelton v. Commonwealth, 274 Va. 121, 127-28, 645 S.E.2d 914, 917 (2007); see King v. Commonwealth, 264 Va. 576, 581, 570 S.E.2d 863, 865-66 (2002); Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998).

Clearly, pursuant to Code § 8.01-384(A), the Helms preserved their right to challenge on appeal the ruling of the circuit court. As agreed upon by the circuit court, the Helms submitted a written memorandum and argued that they owned the title to Parcel 2 by adverse possession. The trial court was well aware of the Helms' legal positions and the Helms did not expressly withdraw or waive their arguments.

5

We recognize that Rule 5:25 states: "Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." However, Code § 8.01-384(A), which the Manspiles cite but do not discuss in its entirety, is controlling over Rule 5:25, and we must apply the statutory provision. Va. Const. Art. VI, § 5; Dorn v. Dorn, 222 Va. 288, 291, 279 S.E.2d 393, 394-95 (1981); Turner v. Commonwealth, 221 Va. 513, 519-20, 273 S.E.2d 36, 40 (1980).

We now consider the Helms' contention that they established title to Parcel 2 by adverse possession. Upon our determination of the proper application of the law of adverse possession to the facts of this case, we review the circuit court's judgment de novo. Quatannens v. Tyrrell, 268 Va. 360, 365, 601 S.E.2d 616, 618 (2004); Turner v. Caplan, 268 Va. 122, 125, 596 S.E.2d 525, 527 (2004); The Barter Foundation v. Widener, 267 Va. 80, 90, 592 S.E.2d 56, 60-61 (2004).

We stated in Grappo v. Blanks, 241 Va. 58, 61-62, 400 S.E.2d 168, 170-71 (1991):

> "To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years. A claimant has the burden of proving all the

6

elements of adverse possession by clear and convincing evidence.

"Use and occupation of property, evidenced by fencing the property, constitutes proof of actual possession. One is in hostile possession if his possession is under a claim of right and adverse to the right of the true owner. One's possession is exclusive when it is not in common with others. Possession is visible when it is so obvious that the true owner may be presumed to know about it. Possession is continuous only if it exists without interruption for the statutory period."

We held in Grappo that the terms claim of title, claim of right, and claim of ownership are synonymous and mean

"a possessor's intention to appropriate and use the land as his own to the exclusion of all others. That intention need not be expressed but may be implied by a claimant's conduct. Actual occupation, use, and improvement of the property by the claimant, as if he were in fact the owner, is conduct that can prove a claim of right."

Id. at 62, 400 S.E.2d at 171. In Grappo, we concluded that when a landowner enclosed approximately four acres of his neighbor's land in addition to his own in a fence and "zealously examined his boundary fence for damage," the landowner had acquired title to the fenced land by adverse possession. Id. at 62-63, 400 S.E.2d at 171 (citations omitted).

Upon application of the aforementioned principles to the record before this Court, we hold that the Helms established that they own title to Parcel 2 by adverse possession. The Helms established each element necessary to support a claim

7

for adverse possession.  Their possession was actual because the property was within their fence; Thomas Helms mowed the grass on Parcel 2 and maintained dog kennels on it; and his predecessors in title kept cattle, a milk cow, and a horse on the parcel. The Helms' predecessors in title had also erected a "smokehouse" on the parcel.

The Helms' possession of the property was adverse to the Manspiles.  Parcel 2 was enclosed within a fence.  When the Manspiles desired to rebuild the fence, which they considered to be the boundary line, they sought and obtained permission from the Helms.  Additionally, on one occasion that we have already mentioned, Mr. Helms asked the Manspiles for permission to use a portion of the Manspiles' property adjacent to Parcel 2 to load timber that had been cut.  The Manspiles refused to give Mr. Helms permission to load timber on the Manspiles' property.  Nonetheless, Mr. Helms made a "skid road" on Parcel 2 and used the skid road to transport the timber.  James Manspile testified that he did not take any action to stop Mr. Helms from using Parcel 2 to transport the timber because he did not think he had a right to stop him.

Parcel 2 was used exclusively by the Helms and their predecessors in title and such use was open and notorious and

continuous well in excess of fifteen years.[*] For example, the Helms cleared brush and cut wood on the property, and they treated Parcel 2 as their property and used all of it since they acquired the property in 1972. The Helms also asserted a claim of right to the property as demonstrated by their use and conduct.

## V.

The Manspiles, relying in part upon a document dated March 1915, claim that they have an easement to use a wagon road that extends from their property to a public road, Indian Rock Road. The circuit court held in its letter opinion and order that if the March 1915 document created a valid easement, the easement was in gross and did not run with the land, that the Helms' property could not be burdened by the easement because the March 1915 document was never recorded and the Helms are bona fide purchasers of value without notice; and that the easement had been abandoned. The Manspiles argue that the circuit court erred in its rulings.

Assuming, without deciding, that the March 1915 document created a legally valid easement, we hold that the circuit

---

[*] We note that Code § 8.01-236 states in relevant part: "No person shall make an entry on, or bring an action to recover, any land unless within fifteen years next after the time at which the right to make such entry or bring such action shall have first accrued to such person or to some other person through whom he claims."

9

court correctly held that the easement had been abandoned. The principles controlling the abandonment of an easement are well established. The litigant claiming abandonment of an easement must establish such abandonment by clear and convincing evidence. Hudson v. Pillow, 261 Va. 296, 302, 541 S.E.2d 556, 560 (2001); Pizzarelle v. Dempsey, 259 Va. 521, 528, 526 S.E.2d 260, 264 (2000); Robertson v. Robertson, 214 Va. 76, 82, 197 S.E.2d 183, 188 (1973). "Nonuse of an easement coupled with acts which evidence an intent to abandon or which evidence adverse use by the owner of the servient estate, acquiesced in by the owner of the dominant estate, constitutes abandonment." Robertson, 214 Va. at 81-82, 197 S.E.2d at 188; accord Hudson, 261 Va. at 302, 541 S.E.2d at 560; Pizzarelle, 259 Va. at 528, 526 S.E.2d at 264. If the litigant asserting abandonment relies upon the non-use of the easement coupled with an adverse use by the owner of the servient estate, that adverse use must continue for a period of time sufficient to establish a prescriptive right. Hudson, 261 Va. at 302, 541 S.E.2d at 560; Lindsey v. Clark, 193 Va. 522, 525, 69 S.E.2d 342, 344 (1952). Mere non-use is not sufficient to establish an abandonment. Hudson, 261 Va. at 302, 541 S.E.2d at 560; Lindsey, 193 Va. at 525, 69 S.E.2d at 344.

Applying the aforementioned principles to the evidence in this case, it is clear that the Manspiles abandoned the easement, if it ever existed. When the Helms acquired their property in 1972, the property was improved with a house that contained a carport and a retaining wall that had blocked the easement for more than 30 years. The Helms have barred the Manspiles from using the easement for more than 20 years, except when the Helms gave the Manspiles permission to use the easement. Brush had grown in portions of the easement and "deadfall [trees]" blocked portions of the easement. The Manspiles never made a claim of right to use the easement with the Helms and the Manspiles' claims of vehicular use of the easement all occurred with permission of the Helms. The Helms told the Manspiles' predecessors in title, on several occasions, that they could not use the easement and the uncontradicted testimony is that the easement had not been used since 1959. Therefore, we hold that the circuit court did not err in concluding that if an easement did exist, the easement had been abandoned.

VI.

In conclusion, we hold that the Manspiles do not have an easement to use the southern portion of the Helms' property and we will affirm that portion of the circuit court's judgment. We also hold that as a matter of law, the Helms

11

established title ownership, by adverse possession, of Parcel 2 and we will reverse that portion of the circuit court's judgment that holds otherwise.  We will remand this case to the circuit court for the entry of a judgment, which shall be recorded among the land records, that the Helms own title to Parcel 2.

Affirmed in part,
reversed in part,
and remanded.