COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Alston and Senior Judge Coleman


ROBERT LOUIS FREEMAN, III

                                                      MEMORANDUM OPINION[*]
v.       Record No. 1550-10-4                              PER CURIAM
                                                       FEBRUARY 15, 2011
DEBORAH LEIGH GOLDEN


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Randy I. Bellows, Judge

              (Robert Louis Freeman, III, *pro se*, on briefs).

              (Christopher Wm. Schinstock; Cottrell Fletcher Schinstock Bartol &
              Cottrell, on brief), for appellee.


        Robert Louis Freeman, III (father) appeals a custody and visitation order.  Father argues that

the trial court erred by (1) ordering that Deborah Leigh Golden (mother) could control the timing,

frequency, location, and type of play activities of the child while the child is in father's custody;

(2) ordering father to transport the child to therapy appointments during his custodial time with the

child; (3) changing its May 13, 2010 order on June 14, 2010 without the introduction of any new

evidence and absent a material change in circumstances; and (4) intervening in father's day-to-day

decisions about the child's activities by ordering that (a) the child be given a cell phone by mother

to use at father's house against father's wishes and (b) father be prohibited from allowing the child

to walk two blocks from his house to her school until the child turns twelve years old.  Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

Father and mother married in 1995 and divorced on December 21, 2004. The parties had one child, who was born in 2000. On December 9, 2004, father and mother entered into a separation and property settlement agreement, which was incorporated into the parties' final decree of divorce. The parties agreed to joint legal and physical custody of the child.

Subsequently, mother filed a motion to modify custody and visitation. On June 6, 2009, the trial court entered a custody order (the 2009 custody order), according to which the parents maintained joint legal and physical custody. The 2009 custody order also addressed issues regarding the child's extracurricular activities and therapy.

On November 10, 2009, mother filed a "Petition for Modification of Custody and/or Custodial Decision-Making" and sought sole legal custody of the child and final decision-making authority with respect to the child. Father filed responsive pleadings and prayed that the parties continue to share joint legal and physical custody of the child, but if that could not continue, he asked for sole legal custody of the child. After a three-day ore tenus hearing, the trial court ruled from the bench that the parties would maintain joint legal custody; however, mother would have the final decision-making authority, after consulting with father, on issues relating to their child. On June 4, 2010, the parties returned to the trial court for entry of an order. Father disagreed with portions of the draft order prepared by mother's counsel, and each party presented their arguments to the trial court regarding the terms of the order. The trial court clarified its ruling and entered the order on June 14, 2010. This appeal followed.

ANALYSIS

Child's activities

Father argues that the trial court erred when it ordered mother could control the timing, frequency, location, and type of play activities of the child while the child is in his care.[1]

The 2009 custody order provided that the child would continue to play soccer "only so long as both Parents agree to [the child's] participation in said sport." The 2009 custody order further provided:

> In addition to the parameters pertaining to [the child's] participation in Soccer . . . , each parent shall be able to choose either one (1) additional sport or two (2) extra-curricular activities, such as Girl Scouts and Piano Lessons; however, none of these activities shall intrude on the other parent's custodial time . . . , unless the other parent agrees to participate in said activity.

Subsequently, father no longer wanted the child to play in the Challenge League, but instead play in the non-challenging recreational league in which she previously played. Mother disagreed and thought the child should continue in the Challenge League, which the child enjoyed playing in and where her friends played. Since the parties could not agree, the child stopped playing soccer.[2]

At trial, mother requested that she be allowed to decide what sport the child plays. Father objected to this request, arguing that mother could not schedule activities during his custodial time. He asserted that in Eichelberger v. Eichelberger, 2 Va. App. 409, 345 S.E.2d 10 (1986), this Court held that a parent could not schedule activities during the other parent's custodial time.

---

[1] The only play activity that may transcend father's time is one sporting activity.

[2] Father argues that further discussion of the soccer provision in the 2009 custody order is moot because the child stopped playing soccer when the parents could not agree. However, the issue is not moot simply because father disagrees with mother on the league in which the child should play. The parties could not agree and brought the matter before the trial court. The trial court resolved the issue by granting mother sole decision-making authority, after consulting with father, on one sporting activity for the child.

The trial court held that the child "has been adversely negatively affected by the failure in co-parenting, which I attribute to [father]." The trial court ruled that mother "will have decision making authority on all matters. . . . Furthermore, I am ruling that she needs to consult – continue consulting [father], but . . . she may terminate the consultation at any point where she believes that he is harassing her or she believes the consultation has become unproductive." With respect to sports, the trial court ruled that after consulting with father, mother had the "final decision making authority" and could schedule "one sporting activity that transcended the time, meaning that [father] would have to accommodate the time."[3] Father objected because there were no restrictions, so theoretically, mother could register the child in a travel league and require father to transport the child around the state. Mother's counsel told the trial court that mother intended to enroll the child in the Challenge League. However, if travel were required, then father would be responsible, to which father objected. The trial court refused father's request to "micro-manage this family" and order what type of sports the child played.

> The relationship between a child and non-custodial parent should not be subject to the dictates of the custodial parent unless circumstances justify placing restrictions or conditions on the visitation privileges. Each case may require a court to exercise considerable judgment in placing conditions upon the frequency, duration, place, and extent of visitation, depending upon such factors as the age, relationship, emotional and physical condition of the child or parent; the parents' maturity and ability to responsibly care for a child; the location, availability and desires of the child and parents -- to list but a few. A change in circumstances may necessitate either a complete change in custody, modification of joint or split custody arrangements, or the imposition or removal of conditions on either the rights or responsibilities of a non-custodial parent. But, when visitation privileges have been liberally granted without restriction, absent a finding by the court that the non-custodial parent has acted without concern for the child's well-being or best interest, has demonstrated irresponsible conduct, has interfered with basic

---

[3] When the parties could not agree on the terms of the final order regarding the provision for one sport, the trial court clarified its intended ruling to mean that there can be one sporting activity that transcends both parents' time.

decisions in areas which are the responsibility of the custodial parent, or finding that the activity which is questioned by the custodial parent presents a danger to the child's safety or well-being, neither the custodial parent nor the court may intervene to restrict activities during visitation.

Id. at 413, 345 S.E.2d at 12.

The 2009 custody order had significant restrictions on visitation and the child's activities. The parties' previous arrangement did not work, and they asked the trial court for assistance in resolving their issues. Mother wanted the child to participate in the Challenge League, but father did not. The child previously participated in the Challenge League, and her friends played in that league. The circumstances in this case justified the trial court in placing restrictions and conditions on the child's time spent with father. As the trial court noted, it was evident that the parents were unable to "co-parent" and decide issues together, and father's inability to agree on matters with mother negatively affected the child. Consequently, the trial court ordered that mother could make decisions, including sports activities, for the child, but with father's input. The trial court noted that one sport, such as soccer, could occur during father's time, but it was in the child's best interests to allow that activity.

Father also argued that the trial court did not consider his limited resources and his family's health problems when it ordered him to transport the child to a sporting activity, extra-curricular activities, and therapy. Father makes this argument for the first time on appeal; therefore, we will not consider it. Rule 5A:18.

Considering the circumstances of this case, the trial court did not err in ordering that mother could schedule a sporting activity for the child while the child was in father's care.

Transportation

Father argues that the trial court erred when it ordered father to transport the child to therapy appointments during his custodial time with the child.

- 5 -

Since June 2009, the child has attended weekly therapy sessions. The counselor recommended that father bring the child one week, and mother bring the child the next week. The counseling and its schedule continued throughout the trial. The counselor testified at trial and recommended that the counseling continue. The trial court ordered that mother would have the final decision-making authority regarding the child's therapy.

On June 4, 2010, when the parties were reviewing the terms of the order with the trial court, father argued that the trial court ruled from the bench that mother should take the child to all of her medical appointments. As a result, father did not believe that he should be ordered to take the child to her therapy appointments. Mother argued that the current arrangement of the parents alternating who takes the child to therapy was the counselor's recommendation. The trial court then asked father, "Well, what is the problem with you driving – what is the problem with you taking [the child] every other week to Dr. Zuckerman?" Father responded, "If you want me to, Your Honor, I will be more than happy to." The trial court concluded, "That resolves it."

Father did not preserve this issue for appeal. "Under Code § 8.01-384(A) . . . , if a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal." Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010) (citing Helms v. Manspile, 277 Va. 1, 7, 671 S.E.2d 127, 129-30 (2009)). Father expressly waived his argument because he told the trial court that he would be willing to transport the child to therapy every other week. Therefore, we will not consider this issue.

### Orders

Father argues that the trial court erred when it changed its May 13, 2010 order on June 14, 2010 without the introduction of new evidence and absent a material change in

- 6 -

circumstances. Specifically, father contends the trial court changed its ruling with respect to transporting the child to therapy appointments and sport activities.

As noted above, father waived his argument regarding transporting the child to therapy. Therefore, we will not consider this portion of his argument.

Father did not preserve the issue as it relates to transporting the child to sport activities because he did not make this argument to the trial court. See Rule 5A:18. We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

Cell phone and walking to school

Father argues that the trial court erred by intervening in father's day-to-day decisions about the child's activities because it ordered that (1) mother could provide the child with a cell phone to use at father's house against his wishes and (2) until the child was twelve years old, the child was not allowed to walk to or from school without adult supervision.

"As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Due to mother's difficulties in reaching the child by phone when she was with father, mother proposed that she provide the child with a cell phone, so that the child could call her and she could call the child. Father was opposed to the child having a cell phone at the age of nine years old because he thought she was too young. He also feared that his younger children would think that the cell phone was a toy and try to take it out of the child's hands while she was talking on it. The trial court noted that the parties spent an "enormous amount of energy . . . devoted to this issue, . . . [including] hundreds of emails . . . ." The trial court stated that

mother's solution to the difficulties with speaking to the child by telephone would be resolved with the cell phone, and questioned father about his refusal. The trial court commented,

> I mean it sounds to me like you don't see all the problems
> associated with telephone visitation as problematic, or you only see
> the problems that you believe she's created as problematic. What
> – [interjection by father] – I'm saying is I'm seeing a huge amount
> of time devoted by two parents to the issue of telephone visitation
> that [mother] has offered largely to resolve, and you've rejected it.
> And saying it's [not] age appropriate, that doesn't tell me
> anything . . . .

The trial court found that father's refusal to allow the child to use the cell phone provided by mother was "thwart[ing] the communication" between the child and mother. Given the evidence of the significant difficulties that these parties had with telephone contact, the trial court did not abuse its discretion in allowing mother to provide the child with a cell phone to call her while the child was at father's house.

Father also contends the trial court erred by ruling that the child could not walk to school by herself until she was twelve years old.[4] There was evidence that the child routinely walked to school without adult supervision when she stayed with her father. Father lives close enough to the school where the child could walk. Father allowed her to walk to and from school. He testified that she walked with friends, but admitted that there were no adults walking with them. A crossing guard was close to the school. Mother expressed her concern about the child's safety in walking to school without adult supervision, especially because a registered sex offender lived within 0.1 mile of father's house. Upon learning that the child walked to school without adult supervision, the trial court stated,

> If there's nothing else that is accomplished in the hearing today,
> that's going to stop, at least until [the child] is out of elementary
> school because a child, in my view at age 9 or age 10, or until that

---

[4] The order also limits the child walking, without adult supervision, to and from extra-curricular activities and school events.

- 8 -

child is out of elementary school should not be walking to school
or from school without adult supervision.

Despite the trial court's ruling, there was further evidence that on a subsequent day, father continued to allow the child to walk to school without adult supervision. The trial court responded as follows:

> I thought I really could not have been clearer, and I think it
> surprises me to hear that after what I said [the child] was still
> walking to school without adult supervision, but I am ordering
> today that until [the child] graduates from elementary school, until
> she completes elementary school, she is not to walk to or from
> school without adult supervision.[5]

> \*   \*   \*   \*   \*   \*   \*

> [T]o me, especially with evidence before me that there is a
> registered sex offender living a block or two away, to me this is a
> safety issue, . . . but when I have two parents and one of whom
> clearly believes she should not walk without adult supervision, I
> believe it is appropriate, and therefore I am going to order that be
> accommodated because I think that is absolutely in [the child's]
> best interest.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

Here, there was sufficient evidence to support the fact that it was in the child's best interests to have adult supervision while walking to and from school. The trial court explained that its ruling was based on a safety concern for the child.

Father contends the trial court interfered with his parenting choices by allowing the child to have a cell phone and by ordering that the child have adult supervision to and from school. However, as explained above, the trial court's orders were not issued to restrict father's parenting

---

[5] The trial court later clarified that that this restriction continues until the child is twelve years old, regardless of the age that she graduates from elementary school.

decisions, but to resolve a continuing problem between the parents regarding telephone contact and to ensure the safety of the child as she goes to and from school.

The trial court did not abuse its discretion in making these rulings.

<u>Attorney's fees</u>

Mother asks this Court to award her attorney's fees and costs incurred on appeal. <u>See</u> <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Having reviewed and considered the entire record in this case, we hold that mother is entitled to a reasonable amount of attorney's fees and costs, and we remand for the trial court to set a reasonable award of attorney's fees and costs incurred by mother in this appeal.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27. We remand this case to the trial court for a determination and award of the appropriate appellate attorney's fees and costs.

<u>Affirmed and remanded.</u>