Present:  All the Justices

STEPHEN D. QUATANNENS, ET AL.

v.  Record No. 032562      OPINION BY JUSTICE DONALD W. LEMONS
                                September 17, 2004
ROBERT E. TYRRELL, JR., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
J. Howe Brown, Jr., Judge

In this appeal, we consider the evidentiary requirement to sustain a claim of adverse possession in a dispute over a narrow strip of land between adjoining landowners.

I.  Facts and Proceedings Below

Stephen D. Quatannens and Eileen A. Quatannens ("the Quatannens") reside at 217 S. Alfred Street in Alexandria, Virginia.  Robert E. Tyrrell, Jr. and his wife, Jeanne M. Hauch, ("the Tyrrells") reside at 219 S. Alfred Street, Alexandria, Virginia.  In dispute is the ownership of a strip of land 100 feet long and ranging from approximately eight to 20 inches wide, running the length of the adjoining parcels of property.  The strip of land contains a small portion of a room of the Quatannens' house, part of a brick walkway, part of a paved parking area, and one side of a brick arch over the walkway at the front of the Quatannens' house, all of which have existed since at least 1976.  The remainder of the strip appears to contain some vegetation.

The Quatannens purchased their property in October, 1995. Eileen Quatannens testified that the Quatannens had not intended to possess any property that they did not own and were unaware of any boundary issues until the fall of 2001 when the Tyrrells asserted their claim. Although the Quatannens had been given a plat of the property at the time of purchase, they testified that they had not reviewed it. The Quatannens filed a bill of complaint for injunctive relief and to quiet title in the Circuit Court.

At a bench trial, two previous owners of 217 S. Alfred Street testified that they presumed that the strip belonged to them and carried out such activities as gardening, storage, handball, and walking on the disputed land. A prior owner of 219 S. Alfred Street, the Tyrrells' property, testified in a deposition that he believed that his property ended at the wall of the home at 219 S. Alfred Street and that the property at 217 S. Alfred Street encompassed the strip of land in dispute.

Jeanne Hauch was the sole witness for the Tyrrells. She testified that she and her husband had "bought the plat" at 219 S. Alfred Street. She admitted that she had not asserted any claims toward the disputed property before October 2001.

The trial court found that the Quatannens "had not established that their possession was 'hostile,' as the

possession had been by mistake for the majority of the period" and stated that it further found for the Tyrrells "for the reasons stated [in the Tyrrells'] closing argument," which were that "i) the acts of Plaintiffs in using the disputed land had been insufficient to establish possession, ii) that there had not been actual notice to the Defendants and their predecessors, and iii) that adverse possession could not be by mistake." The trial court denied the Quatannens' motion to reconsider.

## II. Analysis

On appeal, the Quatannens contend that the trial court erred in denying their claim of adverse possession on three grounds:

a) that "the trial court erred in not finding for plaintiffs as to adverse possession due to lack of actual notice to defendants and their predecessors;"

b) that "the trial court erred in finding that the acts of plaintiffs and their predecessors in interest were not sufficient to establish possession;" and,

c) that "the trial court erred in finding that the plaintiffs could not adversely possess because they did not have a hostile intent to take the land in dispute from another."

The trial court's opinion and the arguments of the Tyrrells appear to conflate all the elements of adverse possession into hostile intent.  The facts of the case are largely undisputed.  In determining the proper application of the law of adverse possession to the facts of this case, we review the trial court's decision de novo.  Turner v. Caplan, 268 Va. 122, 125, 596 S.E.2d 525, 527 (2004) (questions of law subject to de novo review); Barter Found. v. Widener, 267 Va. 80, 90, 592 S.E.2d 56, 60 (2003) (regarding mixed questions of law and fact, a trial court's application of law is subject to de novo review); see also Carmody v. F.W. Woolworth Co., 234 Va. 198, 201, 361 S.E.2d 128, 130 (1987).

## A.  Prior Cases

The doctrine of adverse possession in Virginia has a long history.  Many cases are fact-specific and their resolution may turn on only one or two of the elements of adverse possession.

In Taylor v. Burnsides, 42 Va. (1 Gratt.) 165, 190 (1844), the Court held that "the elements of an adversary possession . . . consist of an exclusive, actual, continued possession, under a colourable claim of title."  The Court emphasized that possession must be exclusive and viewed it as a necessity that "when the rightful owner is in actual possession, that he should be disseised or ousted, and

4

continually thereafter kept out by the hostile claimant."
When the rightful owner is not in actual possession and the
land appears vacant, the Court opined, "[S]till it is
indispensable that [possession] should be not the less
exclusive in its commencement and continuance. Though the
adverse claimant cannot in such case turn out, he must shut
out the rightful owner." Id. at 190.

This Court in Taylor also emphasized the "actual" nature
of the possession. The opinion states that, actual possession
is "absolute dominion and enjoyment of the property." Id. We
noted that actual possession might be accomplished "by
residence, cultivation, improvement, or other open, notorious
and habitual acts of ownership." Id. at 192.

In Turpin v. Saunders, 73 Va. (32 Gratt.) 27 (1879), an
appeal of an action of ejectment, the plaintiffs to the
ejectment claimed adverse possession of the subject land. The
defendants claimed that their predecessor in interest had
leased the land in question to a tenant. The plaintiffs
claimed that the same tenant had a prior lease for the same
land from the plaintiffs' predecessor in interest. The lease
between the defendants' predecessor and the tenant was reduced
to writing while the lease between the plaintiffs' predecessor
and the tenant was not written and had not been widely
publicized. In fact, the tenant had concealed the prior lease

5

from the defendants' predecessor.  Id. at 31-33.  We held that the tenant's lease with the plaintiff's predecessor could not be used to establish adverse possession because "possession must be not only with claim of title, but it must be visible and notorious, and not secret and clandestine . . . the occupation must be of that nature and notoriety that the owner may be presumed to know the adverse possession."  Id. at 34.  As we said in Turpin,

> the plaintiff's claim of possession is lacking
> in one of the most essential elements to render
> it adversary in its character.  Simpkins,
> although in the actual occupation of the
> premises, did not claim title in himself or in
> Saunders.  On the contrary, he accepted a lease
> from Cecil, and claimed to hold under him.

Id. at 35.

In Christian v. Bulbeck, 120 Va. 74, 90 S.E. 661 (1916), we undertook to clarify the law on the subject of adverse possession by mistake.  After extensive review of earlier Virginia cases and cases from other jurisdictions, we concluded that:

> [T]he correct rule, and the rule in Virginia,
> [is that] where the proof is that the location
> of the line in question was caused in the first
> instance by a mistake as to the true boundary,
> the other facts and circumstances in the case
> must negative by a preponderance of evidence
> the inference which will otherwise arise that
> there was no definite and fixed intention on
> the part of the possessor to occupy, use and
> claim as his own[,] the land up to a particular
> and definite line on the ground.  That is to

6

say, on the whole proof a case must be presented in which the preponderance of evidence as to the character of the possession, how held, how evidenced on the ground, how regarded by the adjoining land owner, etc., etc., supplies the proof that the definite and positive intention on the part of the possessor to occupy, use and claim as his own the land up to a particular and definite line on the ground existed, coupled with the requisite possession, for the statutory period, in order to ripen title under the statute.  Whether the positive and definite intention to claim as one's own the land up to a particular and definite line on the ground existed, is the practical test in such cases.

Id. at 110-111, 90 S.E. at 672.  We further explained:

The collateral question whether the possessor would have claimed title, claimed the land as his own, had he believed the land involved did not belong to him, but to another, that is, had he not been mistaken as to the true boundary line called for in his chain of title, is not the proximate but an antecedent question, which is irrelevant and serves only to confuse ideas.

Id. at 111, 90 S.E. at 672.  Citing an earlier case with approval, we then stated that "[i]n Virginia, proof of an expressed intention to claim title is not necessary."  Id. at 107, 90 S.E. at 671 (citing Haney v. Breeden, 100 Va. 781, 783-84, 42 S.E. 916, 917 (1902)).

In LaDue v. Currell, 201 Va. 200, 110 S.E.2d 217 (1959), we examined the types of acts sufficient to establish adverse possession.  In a dispute between neighboring landowners in Centreville, Virginia, the Court explained that "[t]he usual kind of actual possession relied upon is occupancy, use or

7

residence upon the premises for the statutory period of time, evidenced by cultivation, enclosure, or erection of improvements, or other plainly visible, continuous and notorious manifestation or exclusive possession in keeping with the character and adaptability of the land." Id. at 207, 110 S.E.2d at 222. We held that:

> No precise rule of general application can be laid down . . . acts of dominion over the land must, to be effective as against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another. A mere temporary use of the property by a trespasser at intervals, whether such intervals are remote or frequent, is not enough.

Id. (emphasis added) (internal quotations omitted). Applying this broad rule, we held that on an unenclosed, unimproved area of land, "periodical or occasional cultivation and mowing of the grass . . . for the purpose of appearance" was not enough to establish adverse possession. Id.

A concise restatement of the rule and an explanation of each element of adverse possession were provided in Grappo v. Blanks, 241 Va. 58, 400 S.E.2d 168 (1991). We held:

> To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years. A claimant has the burden of proving all the elements of

8

> adverse possession by clear and convincing evidence.
>
> Use and occupation of property, evidenced by fencing the property, constitutes proof of <u>actual</u> possession. One is in <u>hostile</u> possession if his possession is under a claim of right and adverse to the right of the true owner. One's possession is <u>exclusive</u> when it is not in common with others. Possession is <u>visible</u> when it is so obvious that the true owner may be presumed to know about it. Possession is <u>continuous</u> only if it exists without interruption for the statutory period.

<u>Id.</u> at 61-62, 400 S.E.2d at 170-71 (citations omitted). In <u>Grappo</u>, we also defined the terms "claim of right," "claim of title," and "claim of ownership" as synonyms meaning

> a possessor's intention to appropriate and use the land as his own to the exclusion of all others. That intention need not be expressed but may be implied by a claimant's conduct. Actual occupation, use, and improvement of the property by the claimant, as if he were in fact the owner, is conduct that can prove a claim of right.

<u>Id.</u> at 62, 400 S.E.2d at 171. Where a landowner enclosed three acres of his neighbor's land in addition to his own in a fence, and "zealously examined his boundary fence for damage" the landowner was found to have earned title to the fenced land by adverse possession. <u>Id.</u> at 62-63, 400 S.E.2d at 171.

We had occasion to consider the relationship between permissive use and adverse possession in <u>Mary Moody Northen, Inc. v. Bailey</u>, 244 Va. 118, 418 S.E.2d 882 (1992). In that case, Jim Bailey, the father of the plaintiffs claiming

9

adverse possession, lived in a log cabin situated on the land of a charitable foundation for 36 years. All parties agreed that Bailey had lived on the land openly and continuously and that the legal titleholders knew of Bailey's occupancy. Id. at 120, 418 S.E.2d at 883-84. However, during the time of Bailey's occupancy, Bailey communicated with the owners "on a number of occasions" and even "acquiesced in the request of the foundation that he get firewood from fallen trees rather than by chopping down trees." Id. at 121, 418 S.E.2d at 884. The Court held that "[w]here, as here, the legal title holder is operating on the assumption that one living on its land is doing so with its permission, and does not interfere with that occupancy, it would be manifestly unjust to allow that occupancy to ripen into an ownership interest through the silence or inaction of the occupant." Id. at 122, 418 S.E.2d at 885. The protestations of Bailey against the erection of a fence by the foundation, which interfered with access to his home, could not "be characterized fairly as an affirmative statement of an adverse claim" sufficient to provide notice to the owner that Bailey now claimed ownership of the land. Instead, the Court held "it is more indicative of occupancy by permission." Id. His protestations expressed "need for his family" not a claim of right. Id. at 123, 418 S.E.2d at 885.

10

In Chaney v. Haynes, 250 Va. 155, 458 S.E.2d 451 (1995), we revisited the subject of mistake as it relates to the establishment of a prescriptive easement. The plaintiffs, Haynes and others, had been granted an express easement for access over land that had been subdivided. The easement actually ran over land owned by Josephine Erwin, but the grantees had been using a path over land owned by Chaney at the time of the suit, under the mistaken belief that it was the path described in the express easement. Id. at 156-58, 458 S.E.2d at 452-53. We held:

> The essence of an adverse use is the intentional assertion of a claim hostile to the ownership right of another. Use of property, under the mistaken belief of a recorded right, cannot be adverse as long as such mistake continues. The present record shows that the plaintiffs based their use of Chaney's land solely on their mistaken belief that it was the land described in their express easement. Thus, the plaintiffs have failed to prove that a prescriptive easement was established.

Id. at 159, 458 S.E.2d at 453-54 (citations omitted). We distinguished Chaney from other prescriptive easement cases because, in other cases, "prescriptive easements had been established when the evidence showed, among other things, that both of the easement claimants held a general belief [that] they had the right to use the ways at issue." Id. at 160, 458 S.E.2d at 454. The claimants in other cases did not assert that their "right derived from an express easement." Id.

11

Three years later, we considered another case involving "the effect of a mistake as to the location of an actual boundary line upon the intent to hold disputed land adversely." Hollander v. World Mission Church, 255 Va. 440, 441, 498 S.E.2d 419, 420 (1998). In Hollander, a church and its adjoining property owners both claimed possession of a strip of land between their properties. The trial court found that the adjoining owners had established all elements of adverse possession except "adverse or hostile possession." Id. at 441, 498 S.E.2d at 420. According to the evidence, "the claimants intended to claim title to the land extending to [a tree line] as a part of the property they thought was conveyed to them." Id. at 442, 498 S.E.2d at 420. Relying on Christian v. Bulbeck, the Hollander court specifically distinguished Chaney on the ground that "the claimants in this case based their claim not only on the deed descriptions, but also on their belief that their property line ran to the line of woods." Id. at 443, 498 S.E.2d at 421. Consequently, we reversed the judgment of the trial court and held "that the claimants' possession was accompanied by the requisite adverse or hostile intent." Id.

Finally, in Kim v. Douval Corp., 259 Va. 752, 529 S.E.2d 92 (2000), we once again addressed the issue of possession by permission. Kim was a landowner's suit to eject a car wash

12

business from a parcel of land.  The car wash's use of the land began in the 1960s and included the installation of lighting, asphalt, signage, fencing, and vacuums on the land. Id. at 754-55, 529 S.E.2d at 93-94.  The only "genuinely disputed [issue] at trial" was "whether Douval's possession was 'hostile' under a claim of right."  Id. at 757, 529 S.E.2d at 95.  We quoted from Grappo for the definition of "hostile," and defined "claim of right" as referring "to the intent of a claimant to use land as the claimant's own to the exclusion of all others."  Id. at 757, 529 S.E.2d at 95 (quoting Grappo, 241 Va. at 62, 400 S.E.2d at 171).  We explained, "[W]here the original entry on another's land was by agreement or permission, possession regardless of its duration presumptively continues as it began, in the absence of an explicit disclaimer."  Id. (internal quotation marks omitted). We observed that the evidence and permissible inferences from the evidence were in dispute as to the nature of possession and use at the beginning of the car wash's occupancy.  Because the jury had resolved the inferences favorably to the owner, we held that the trial court "erred in setting aside the jury verdict."  Id. at 758, 529 S.E.2d at 96.

B.  Application

13

As stated in the cases discussed above, in Virginia, adverse possession requires proof, by clear and convincing evidence, of possession that is:

1) actual,

2) hostile or adverse,

3) exclusive,

4) visible or open and notorious,

5) continuous for a period of 15 years,[*] and

6) under a claim of right.

A single act or piece of evidence may tend to prove more than one element of adverse possession. For example, "occupation, use and improvement of the property . . . can prove a claim of right," Grappo, 241 Va. at 62, 400 S.E.2d at 171. "[O]ccupation, use and improvement" may also prove actual possession. Taylor, 42 Va. at 192; LaDue, 201 Va. at 207, 110 S.E.2d at 222. Similarly, occupation, use, and improvement may also be used to establish exclusivity and visibility.

### 1. Hostile Possession

In dispute in this case is the hostility of the Quatannens' possession of the land to the legal title of the Tyrrells. In Taylor, 42 Va. at 190, it is clear that actual, exclusive, and visible possession without permission necessarily meant that the claimant's interest was hostile to

14

that of the legal titleholder.  More recently, in Grappo, 241

Va. at 62, 400 S.E.2d at 171, we defined hostile possession as

possession "under a claim of right and adverse to the right of

the true owner."  In other words, the possessor must profess,

through words or actions, a belief that he is entitled to use

the land and prevent others from using it in a manner that

precludes the legal owner from exercising his rights over the

property.  If possession is hostile, the legal owner and the

possessor cannot simultaneously exercise control over the

land.  Thus, permission negates hostile possession.  See Mary

Moody Northen, 244 Va. at 122, 418 S.E.2d at 885.  In narrow

circumstances, mistake may also negate hostile possession.

Where a mistake occurs in determining the location of a

boundary line described in a deed and the claimant has not

proved "the definite and positive intention . . . to occupy,

use and claim as his own the land up to a particular and

definite line on the ground," then the claimant cannot

establish adverse possession.  See Christian, 120 Va. at 110-

111, 90 S.E. at 672.  See also Chaney, 250 Va. at 159, 458

S.E.2d at 453-54.  However, when a claimant mistakenly

believes that a particular "line on the ground" represents the

extent of his or her own land and treats all the land within

the line on the ground as his or her own in a manner that

---

<sup>*</sup> Code § 8.01-236.

15

satisfies the other requirements of adverse possession —
particularly actual, exclusive, and visible possession — then
the hostility requirement is generally satisfied.

The Quatannens have provided clear and convincing proof
that they possessed "the positive and definite intention to
claim as [their] own the land up to a particular and definite
line on the ground."  Christian, 120 Va. at 111, 90 S.E. at
672.  They provided evidence that previous owners of 219 S.
Alfred Street had believed that the disputed land belonged to
the owners of 217 S. Alfred Street.  The Quatannens and two
previous owners of 217 S. Alfred Street testified that they
believed that their property included the disputed land.  They
proceeded to use the land in a manner consistent with
ownership, including gating the land, building a structure on
the land, and making other improvements to the land.  Neither
the Tyrrells nor any predecessor in title ever made any claims
to the land before October 2001, despite the Quatannens'
actual, open, and exclusive use of the land.

The testimony of Eileen Quatannens that the Quatannens
had not intended to possess any property that they did not own
is irrelevant because, "[t]he collateral question whether the
possessor would have claimed title, claimed the land as his
own, had he believed the land involved did not belong to him,
but to another, that is, had he not been mistaken as to the

16

true boundary line called for in his chain of title, is not the proximate but an antecedent question, which is irrelevant and serves only to confuse ideas." Christian, 120 Va. at 111, 90 S.E. at 672. All of the other evidence at trial proves that the Quatannens and their predecessors had a definite and positive intention to occupy, use, and claim the land – so much so that the true legal owners believed that the possessors owned the land. Therefore, the hostile character of the Quatannens' possession has not been undercut by the fact that they mistakenly believed the land was theirs. To the extent that the trial court concluded otherwise, it erred.

The Tyrrells maintain that the Quatannens did not prove that the original use of the disputed land by previous owners of 217 S. Alfred Street was not by permission. According to the Tyrrells, the Quatannens had to prove that none of their predecessors had used the strip of land by permission in order to claim adverse possession. This interpretation and application of the law of adverse possession is incorrect.

Permission is properly viewed as a defense to a claim of adverse possession. As such, the defendant to the claim has the burden of proof. In Mary Moody Northen, the defendant produced the testimony of its employees to show that the claimants' possession began and continued by permission. 244 Va. at 121, 418 S.E.2d at 884. The defendant also produced

17

evidence that both it and the claimants' father behaved toward the land and each other in a manner consistent with the fact that the father's possession of the land was by permission. Id. at 121-22, 418 S.E.2d at 884-85.

The Tyrrells also cited Kim for the proposition that a presumption of permission exists wherever "the record does not indicate the circumstances under which . . . possession of the disputed strip . . . began."  259 Va. at 757, 529 S.E.2d at 95.  In that appeal from a jury verdict, we reviewed the evidence and held that "conflicting inferences [could] be drawn from the evidence" as to whether possession began with permission or not.  Id. at 758, 529 S.E.2d at 96.  Thus, Kim applies very narrowly to its own facts.

In this case, there was no evidence that the possession of the disputed land by the owners of 217 S. Alfred Street began with permission from the owners of 219 S. Alfred Street. The owners of 219 S. Alfred Street, including the Tyrrells before 2001, were not "operating on the assumption that" the owners of 217 S. Alfred Street were using the land with permission.  Mary Moody Northen, 244 Va. at 122, 418 S.E.2d at 885.  A claimant cannot be expected to prove the non-existence of permission by evidence in most cases.  It was up to the Tyrrells to produce evidence of permission, which they failed to do.  Therefore, to the extent that the trial court premised

18

its finding that the Quatannens' possession of the land was not hostile on the fact that the Quatannens failed to prove that the possession did not begin with permission, the trial court erred.

## 2. Actual Notice

"Actual" notice of possession to the legal titleholder, in the sense of oral or written communications, is not required in order to establish ownership by adverse possession. What must be "actual" is the possession itself. See, e.g., Taylor, 42 Va. at 190, 192.

An owner is presumed to be on notice when the possessor's acts of dominion over the land are open and notorious, visible, and hostile. LaDue, 201 Va. at 207, 110 S.E.2d at 222; Grappo, 241 Va. at 62, 400 S.E.2d at 171. A possessor is not required to explicitly state to an owner that it is in possession of the owner's land. See, e.g., Turpin, 73 Va. at 34.

The Quatannens' actions were open and notorious, visible, and hostile. Certainly, the construction of a room of the house, a brick archway, and a walkway could not be more obvious. Enclosure and improvement of these types are acts that are clearly open, notorious, and hostile. See LaDue, 201 Va. at 207, 110 S.E.2d at 222. Therefore, the Tyrrells and their predecessors had adequate notice of the Quatannens'

19

possession and the trial court erred in finding that the Tyrrells were entitled to "actual" notice in some written or oral form.

### 3.  Sufficiency of the Quatannens' Acts

The uses made of the disputed land by the Quatannens and their predecessors were sufficient to establish adverse possession.  The Quatannens' uses of the land are consistent with the uses that have been found sufficient to establish adverse possession in other cases.

The Quatannens and their predecessors clearly had actual possession of the land.  They demonstrated their "absolute dominion and enjoyment of the property" by making significant improvements to it including the room, the brick arch, the walkway, and the parking area.  They and their predecessors have also cultivated vegetation on the land and used the land for recreational activities.  These types of uses have repeatedly been found sufficient to show actual possession. See, e.g., Taylor, 42 Va. at 192; LaDue, 201 Va. at 207, 110 S.E.2d at 222; Grappo, 241 Va. at 62-63, 400 S.E.2d at 171.

In order to have exclusive possession, a claimant must "shut out the rightful owner." Taylor, 42 Va. at 190.  In this case, the room built on the disputed land clearly shuts out the Tyrrells.  The gate under the brick arch is used for the same purpose.  That these structures do not exclude the

20

Tyrrells from the entirety of the disputed land does not destroy the Quatannens' claim of adverse possession. "Possession may be more manifest to a part, than as to the rest; but in reference to the whole, possession of part is possession of the entire tract or parcel." Id. at 190-91. The Quatannens' evidence satisfied the element of exclusive possession.

According to the evidence presented at trial, the room, the brick arch, and the brick walkway on the disputed strip of land have all existed for at least 28 years. This evidence more than satisfies the requirement that the possession be continuous for a period of 15 years. During this time, the Quatannens and their predecessors, through the actions repeatedly described, occupied, used, and improved the land as if they owned it, satisfying the requirement that they possess the land "under a claim of right." Grappo, 241 Va. at 61-62, 400 S.E.2d at 170-71.

The Tyrrells argue that because one of the Quatannens' predecessors leased the property at 217 S. Alfred Street and none of the tenants testified, that the Quatannens could not establish possession for the statutory period. This argument is without merit because, irrespective of the tenants' actions, the room of the house, the brick arch, and the brick walkway existed throughout that time. The actions of the

21

Quatannens and their predecessors have satisfied all the elements necessary to establish ownership through adverse possession.

### III. Conclusion

The trial court erred in concluding that the Quatannens failed to establish ownership of the disputed land by adverse possession. We will reverse the judgment of the trial court and remand for entry of judgment for the Quatannens and such other action necessary to establish their title.

<u>Reversed and remanded.</u>