## CIRCUIT COURT OF BUCHANAN COUNTY

Vansant Lumber Co.

v.

K-VA-T Food Stores, Inc.

November 17, 2014

Case No. 267-10

BY JUDGE HENRY A. VANOVER

The above-styled case is now before the Court following the bench trial on June 25 and 26, 2014. At the close of evidence, the parties requested leave to file their closing arguments as written briefs. After thorough review of the court file, the evidence presented at trial, and the written arguments of counsel, the Court now makes the following ruling.

### I. *Background*

The present boundary line dispute finds its origins in deeds and conveyances over a century old. A complete chain of title for the implicated properties can be found in Exhibits 1 through 31 and 36 through 39 for K-VA-T, and Exhibits 29 through 44 for Vansant Lumber. The properties at issue began as a single 127 acre tract of land owned by W. L. Dennis and M. A. Dennis. On June 7, 1909, W. L. Dennis and M. A. Dennis conveyed the entire 127 acre tract to C. A. Looney by deed recorded at Deed Book 38, page 59 (hereinafter the "1909 Deed"). (Ex. 2.) The 1909 Deed described a number of calls and natural monuments of relevance to this suit, specifically "two sycamores (down)." (Ex. 2.)

When C. A. Looney died, a partition suit was commenced to divide the 127 acre tract according to her last will and testament. (Ex. 12.) The Commissioners appointed to divide the "bottom land," the land at issue in this suit, and filed a report on July 8, 1929 (hereinafter the "Commissioner's Report"), which divides the parcel as follows:

LOT NO. 1. ASSIGNED TO W. D. LOONEY 5 ACRES.

Beginning at locust, corner to said Looney home tract, N 81 00 E 58.3 ft. to stake in Right of Way of Highway, with same N 15 00 E 162 ft. *to stake, corner garden fence, corner to Lot No. 2, or J. G. Stone, with same S 88 00 W 300 ft. to 2 sycamores on river bank, old corner with reverse of same,* S 36 00 E 230 2 ft. to stake by river, N 81 00 89.2 ft. to beginning.

LOT NO. 2. ASSIGNED TO DR. J. G. STORIE.

Beginning *at a stake by fence in Highway Right way line, corner to W. D. Looney half acre lot, with same S 88 00 W 300 ft. to 2 sycamores, old corner, with old line,* N 04 40 E 394.5 ft. crossing river to a pine and ash (down) corner to lot No. 3, or Albert Looney Lot, with line of same, S 69 50 W 390 ft. to a stake in said Right way line, corner to said Albert Looney, with said Highway S 22 00 W 229.7 ft. to the beginning, containing 1.45 acres to be the same more or less.

(Ex. 13 (emphasis added)). The Commissioner's Report was confirmed by the Court and recorded at Deed Book 64, page 420. (Ex. 13.) Through various conveyances, Vansant Lumber came to own Lot 1, and K-VA-T came to own Lot 2.

A. *Vansant Lumber's Chain of Title*

Vansant Lumber purchased Lot 1, among other land, by deed on May 10, 1956 (hereinafter the "1956 Deed"), recorded at Deed Book 127, page 399. (Ex. 45.) The 1956 Deed described the boundary line at issue, stating "to a stake, corner to garden fence, corner to Lot No. 2 now owned by Buchanan County School Board, with same N 88 00 W 300 ft. to two sycamores on the river bank, old corner. . . ." (Ex. 45.)

B. *K-VA-T's Chain of Title*

K-VA-T purchased Lot 2 through various conveyances from Buchanan County and the Buchanan County School Board (hereinafter the "School Board"). The School Board acquired Lot 2 by deed dated October 19, 1939, located at Deed Book 82, page 157. (Ex. 27.) The School Board constructed Vansant Elementary on Lot 2 and operated the school for several decades. When Vansant Elementary was closed, the School Board deeded the property to the Buchanan County Board of Supervisors on March 21, 2002, by an instrument recorded at Deed Book 543, page 236. (Ex. 38.) K-VA-T purchased Lot 2 from Buchanan County on November 7, 2005, by deed recorded as Instrument No. 05-0003567. (Ex. 39.)

## C. *The Present Litigation*

Vansant Lumber filed suit on April 19, 2010, to establish its boundary line with K-VA-T. The boundary line at issue was created by the Commissioner's Report and is described as "corner garden fence, corner Lot No. 2, or J. G. Storie, with same S 88 00 W 300 ft. to 2 sycamores on river bank." (Ex. 13.) K-VA-T counterclaimed to establish this same boundary line and, in the alternative, obtain title to the disputed land by adverse possession.

## II. *Analysis*

It is axiomatic in the Commonwealth of Virginia that "[i]n boundary proceedings, those who initiate the proceedings bear the burden of proof by a preponderance of the evidence." *Ferris v. Snellings*, 213 Va. 452, 453, 192 S.E.2d 804, 805 (1972). To prevail, the party seeking to establish the boundary line must establish their right to the land by paper title, title by adverse possession, or "by proving a state of facts that will warrant the court in presuming a grant." *Id*. Courts should refrain establishing a boundary line where the moving party has failed to carry its burden.

## A. *Boundary Line by Paper Title*

In the present case, Vansant Lumber seeks to establish the boundary line between the two parcels of land, Lots 1 and 2, via paper title according to the boundary line set forth in the Commissioner's Report, and K-VA-T has counterclaimed to establish the same. The boundary line at issue runs from the "stake, corner garden fence, corner to Lot No. 2, or J. G. Storie, with same S 88 00 W 300 ft. to 2 sycamores on river bank. . . ." (Ex. 13.) To determine the location of said boundary line, Vansant Lumber called as witnesses two duly licensed land surveyors, Richard Bailey and "Sonny" Rigsby, who presented expert testimony regarding the location of the two sycamores. Bailey located the sycamores via natural monuments, and Rigsby located them by utilizing various railroad monuments. Each surveyor used the location of the sycamores to present an expert opinion as to the location of the boundary line at issue. The Court notes that the location of the two sycamores, and thus the location of the boundary line, as opined by each expert is different according to which method the expert uses.

K-VA-T also presented expert testimony from its own duly licensed land surveyor, Tim Lingerfelt. Lingerfelt utilized various monuments, including the state highway and the Levisa River, to determine the location of the two sycamores, which was also different from that asserted by either Bailey or Rigsby. Utilizing this third asserted location of the two sycamores, Lingerfelt presented an expert opinion that the boundary line was in a third location, also different from the locations asserted by Bailey and Rigsby.

The Court notes that the location of the two sycamores and, thus, the boundary line according to the paper title is inextricably mired in the errors

contained in deeds nearly a century old. Indeed, the parties have noted that the various deeds describing the disputed boundary line may reference multiple sets of two sycamores: the 1909 deed references two sycamores down while the 1939 deed references two sycamores on the river bank, without describing whether they are standing or down. Many of these old deeds do not close by acceptable margins or call for monuments, such as a locust bush, which have long been removed. The Court even heard evidence that, over the past century, the Levisa River has moved as much as one hundred feet in certain places. (T. 252:20-253:19.) These errors and inaccuracies have caused three certified land surveyors to vehemently disagree as to the correct location of various calls, tertiary boundary lines, and monuments. In light of this evidentiary enigma, the Court finds that both parties have failed to prove by a preponderance of the evidence the location of the boundary line as described by paper title.

B. *Adverse Possession*

But the parties are not without a remedy. K-VA-T argues that it has acquired title to the disputed property via adverse possession. As stated by the Supreme Court of Virginia in *Grappo v. Blanks*:

> To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years. . . .
>
> Use and occupation of property, evidence by fencing the property, constitutes proof of *actual* possession. One is in *hostile* possession if his possession is under a claim of right and adverse to the right of the true owner. One's possession is *exclusive* when it is not in common with others. Possession is *visible* when it is so obvious that the true owner may be presumed to know about it. Possession is *continuous* only if it exists without interruption for the statutory period.

241 Va. 58, 61-62, 400 S.E.2d 168, 171-72 (1991) (emphasis in original; internal citations omitted). "A claimant has the burden of proving all the elements of adverse possession by clear and convincing evidence." *Id.*

Turning to the present case, the Court notes K-VA-T has readily established all but one element of adverse possession. The record indicates the disputed property was surrounded by a wooden fence prior to its acquisition by the School Board, when it was a baseball field. (T. 40:8-42:21.) This fence was maintained by the School Board well into the 1980s, which constituted evidence of actual possession. (T. 58:2-59:1.) The School Board publicly and visibly incorporated the fenced in portion of land into the neighboring school grounds, first as a sports field and

then as a site for mobile classrooms. (T. 37:6-12; 40:8-42:21; 52:19-53:9; 54:11-55:2.) This possession was continuous for a period in excess of the statutory requirement of fifteen years. During this period, the possession was exclusive, as no credible evidence was adduced that tended to show Vansant Lumber contemporaneously used the fenced in land.

At trial, Vansant Lumber called a single rebuttal witness, Gerald Kinser, an employee of Vansant Lumber. Kinser provided nonspecific testimony that, at some time prior to 2002, the mobile classrooms were removed and various Vansant Lumber employees began parking their vehicles on the disputed land. (T. 286:13-287-5.) The Court notes that this isolated snippet of testimony is rather ectopic when compared to the great wealth of testimony concerning the School Board's exclusive possession of the property for several decades. After weighing the evidence and the credibility of the witnesses, the Court finds that Kinser's anomalous testimony is insufficient to show that the School Board's, and thus K-VA-T's, possession of the land was not exclusive.

The dispositive issue in the present case is that of hostile possession. Vansant Lumber raises three arguments in support of their contention that K-VA-T failed to meet the hostility requirement: (i) the School Board lacked sufficient hostile intent, (ii) the School Board possessed the disputed property by mistake, and (iii) the School Board possessed the property by permission. The Court shall address each of these arguments in turn.

### 1. *Hostile Intent*

At trial, Vansant Lumber's principal argument against adverse possession is that no evidence was presented that indicated that the School Board "intended to take property belonging to Vansant [Lumber]." (Pl. Br. at 12.) In support of this position, Vansant Lumber points to the evidence adduced that the two were "good neighbors" and "cooperated." *Id.* Thus, Vansant Lumber concludes that the School Board "never acted in a way consistent with the hostility required for a claim of adverse possession." *Id.*

In the context of adverse possession, "the terms *claim of right, claim of title,* and *claim of ownership* are synonymous. They mean a possessor's intention to appropriate and use the land as his own to the exclusion of all others. . . . Actual occupation, use, and improvement of the property by the claimant, as if he were in fact the owner, is conduct that can prove a claim of right." *Grappo,* 241 Va. at 62, 400 S.E.2d at 171 (emphasis in original; internal citations omitted). A claimant's hostile intent "need not be expressed but may be implied by a claimant's conduct." *Id.*

Hostility does not require antagonism, malevolence, or virulence; one need not annex land by brute force or violence to accomplish hostile possession. Such malicious conduct is neither condoned nor required by the law. Hostility only requires possession that is adverse to another's legal right in the land. Moreover, testimony of a claimant, or a claimant's agent, that

they had not intended to possess land they did not own is not dispositive. *See Quatannens v. Tyrrell*, 268 Va. 360, 373, 601 S.E.2d 616, 622 (2004) ("The testimony of Eileen Quatannens that the Quatannens had not intended to possess any property that they did not own is irrelevant. . . ."). The claimant is not required to act with the actual intent of taking from another, merely with the intent to use it as their own. As such, the inquiry is whether the claimant "and their predecessors had a definite and positive intention to occupy, use, and claim the land — so much so that the true legal owners believed that the possessors owned the land." *Id.*

The requisite hostile intent is manifested by the actions of the School Board. The School Board affirmatively took possession of the land, maintained a fence surrounding the property, held public sporting events on the land, placed school buildings there, and generally treated it as its own. This use of the disputed property was adverse to Vansant Lumber's, and its predecessor's, claim of right and claim of ownership. *See Kim v. Douval Corp.*, 259 Va. 752, 758, 529 S.E.2d 92, 96 (2000) ("A claim of right can be inferred from unequivocal conduct that is inconsistent with any other reasonable inference."). The testimony elicited from various School Board employees that they did not seek to take the disputed property is, therefore, irrelevant.

The more enlightening testimony was that of Robert Gillespie, former Assistant Superintendent of the Buchanan County schools. Gillespie testified that the mobile classroom units were placed on Vansant Lumber's property. (T. 73:8-14.) Specifically, Gillespie stated:

> A. [by Gillespie:] I was responsible for buying mobile units that can be used for classrooms. Those were placed on Vansant Property up toward Vansant Lumber.
>
> Q. [by McAfee:] You thought it was Vansant property?
>
> A. [by Gillespie:] Well, it was property that was being used by the school.

*Id.* This testimony epitomizes K-VA-T's argument that its predecessor in title, the School Board, was in hostile possession of the disputed property. Accordingly, K-VA-T has demonstrated it and its predecessors possessed the property with hostile intent.

### 2. *Mistake*

Vansant Lumber next appears to argue that K-VA-T cannot adversely possess the land because the School Board mistakenly believed the disputed land to be their own. Vansant Lumber asserts that Buchanan County, and later K-VA-T, relied on a mistake in the Holbrook survey, performed in 2005 in connection with the sale of the property to K-VA-T. In believing

that they owned the land, Vansant Lumber concludes that K-VA-T lacked the requisite adverse, hostile intent to take the land. This argument fails for reasons similar to that enunciated with regard to hostile intent.

Possession of land by mistake presents a narrow defense to adverse possession. "Where a mistake occurs in determining the location of a boundary line described in a deed and the claimant has not proved" the intent to own the land up to a line on the ground, "then the claimant cannot establish adverse possession." *Quatannens*, 268 Va. at 372, 601 S.E.2d at 622.

> The collateral question whether the possessor would have claimed title, claimed the land as his own, had he believed the land involved did not belong to him, but to another, that is, had he not been mistaken as to the true boundary line called for in his chain of title, is not the proximate but an antecedent question, which is irrelevant and serves only to confuse ideas.

*Hollander v. World Mission Church*, 255 Va. 440, 443, 498 S.E.2d 419, 421 (1998). "Whether the positive and definite intention to claim *as one's own* the land up to a particular and definite line *on the ground* existed, is the practical test in such cases." *Christian v. Bulbeck*, 120 Va. 74, 111, 90 S.E. 661, 672 (1916) (emphasis in original). Even if a party was operating under a mistaken deed description, the party can still intend to adversely possess property if he stakes his claim to a particular "line on the ground." *See, e.g., Hollander*, 255 Va. at 443, 498 S.E.2d at 421 (holding "the claimants in this case based their claim not only on the deed descriptions, but also on their belief that their property line ran to the line of woods"); *City of Norfolk v. Hoffert*, 66 Va. Cir. 390, 395 (Norfolk 2005).

The evidence reflects that the School Board, and later K-VA-T, sought to claim not only the property contained within the calls of the deed but, more particularly, to a specific line on the ground, the ditch. Even if K-VA-T was operating under the mistaken belief that it held title to the disputed land, K-VA-T openly claimed the land as its own and excluded all others from occupying it. As K-VA-T was in hostile possession of the land up to the ditch, any mistake as to title to the land is inapposite.

### 3. *Permission*

Finally, Vansant Lumber argues the use of the disputed property by the School Board was "by way of permission" of Vansant Lumber. In support thereof, Vansant Lumber asserts two facts:

> (1) once the school removed buildings located near Vansant Lumber's building and sought to replace them in the same location, Vansant told the school that they could not put them back in the same location, but had to place them on its own

property. The school complied and constructed within the proper bounds of the property. (2) After the school closed, Vansant [Lumber] resumed its use of the property. Vansant Lumber parked their cars [on] the property now in dispute. Vansant Lumber constructed stairs from the disputed property that lead to the Vansant Lumber building.

(Pl. Br. at 13.) Therefore, Vansant Lumber argues K-VA-T's adverse possession claim must fail.

After carefully reviewing the trial record, the Court notes no evidence was elicited which indicated that Vansant Lumber instructed the School Board to refrain from placing buildings on the disputed property. Moreover, the Court heard no evidence that the School Board complied with such a demand.

"Permission negates adverse possession." *Quatannens*, 268 Va. at 372, 601 S.E.2d at 622. "Where the original entry on another's land was by agreement or permission, possession regardless of its duration presumptively continues as it began, in the absence of an explicit disclaimer." *Matthews v. W. T. Freeman Co.*, 191 Va. 385, 395, 60 S.E.2d 909, 914 (1950). Thus, when a landowner grants another permission to occupy a parcel of land, the adverse possession clock does not begin to run until the occupying party gives the landowner notice of their hostile intent. *See, e.g., Mary Moody Northen, Inc. v. Bailey*, 244 Va. 118, 122-23, 418 S.E.2d 882, 885 (1992) (holding a party's adverse possession claim failed because the party occupied the land by permission and failed to give the landowner notice of their hostile intent).

"Permission is properly viewed as a defense to a claim of adverse possession." *Quanannens*, 268 Va. at 373, 601 S.E.2d at 623. Thus, the party defending against the claim of adverse possession — that which asserts legal title to the land — has the burden of proof. *Id.*

No evidence was produced at trial that the School Board's occupancy of the disputed strip of land began with the permission of Vansant Lumber or its predecessor in title. In actuality, the evidence reflects that, when Vansant Lumber purchased Lot 1 in 1956, the School Board was already in hostile possession of the land. Mr. Childress, former president of Vansant Lumber, testified that he and W. D. Looney's son, John, predecessor in title to Lot 1, walked the boundary line now in dispute at the time of purchase, and John explicitly told him the boundary line was along the garden fence which bordered the ditch. Such testimony gives no indication the School Board possessed the disputed property by permission of Vansant Lumber or its predecessor W. D. Looney. Accordingly, Vansant Lumber has failed to carry its burden of proving K-VA-T possessed the property by permission.

## III. *Conclusion*

For the aforementioned reasons, the Court finds that K-VA-T, through its predecessors the School Board and Board of Supervisors has adversely possessed the land up to the edge of the ditch. At trial, the Court heard evidence that the edge of the ditch is now located at the retaining wall which is represented by Line 1 on the Lingerfelt Survey, admitted at trial as Exhibit 60. Accordingly, the Court establishes the boundary line at the retaining wall between Vansant Lumber and K-VA-T properties.

Pursuant to § 8.01-181 of the Code of Virginia, the Court will appoint a surveyor, agreed on by both parties, to make an official survey of this boundary line. If the parties are unable to agree on a surveyor to be appointed by the Court, each party is to nominate a surveyor within thirty days of this Opinion, and the Court will appoint the surveyor of its choosing. The parties shall jointly bear the costs of surveying this boundary line.