# COURT OF APPEALS OF VIRGINIA

## Record No. 1348-25-3

KATHY G. BENNETT, ET AL.
v.
LUCY RENEE ALEXANDER

Present: Judges Causey, Raphael and Duffan

Argued at Lexington, Virginia

Opinion Issued June 2, 2026[*]

### FROM THE CIRCUIT COURT OF AMHERST COUNTY
Jeffrey P. Bennett, Judge

Joseph R. Sanzone, II (Sanzone & Baker, L.L.P., on brief), for appellants.

Daniel B. Sweeney (Sweeney Law, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE STUART A. RAPHAEL

Kathy G. Bennett and her siblings (the Bennett parties) appeal the trial court's decision

declining to set aside the jury's verdict and enter judgment for them on their claims of ejectment

and quiet title to certain land on the property of their neighbor, Lucy Renee Alexander. The

Bennett parties argue that the trial court erred in failing to find that the evidence sufficed as a

matter of law to show that they adversely possessed the property for the requisite 15-year period.

We agree. So we reverse the judgment and remand the case for entry of judgment in their favor

and such further action as necessary to establish their title to the disputed land.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

In July 1978, Lula Mae Grooms ("Lula") bought a house at 126 Estelles Lane in Amherst County. Upon her death in 2014, her children—Bennett, Kenneth Haynes, Shelly Smith, and James Grooms—inherited the property as tenants in common. Smith and James still live in the home.

*Lula builds structures on the property believing it was hers.*

In 1992, Lula applied for a zoning permit to "enlarge [the] kitchen & den." She represented in the application that she had a 50-foot setback from the front of her house that bordered a "state right of way," a 25-foot setback at the back of the house, and 15-foot setbacks on either side. She said in the application that she intended to build a kitchen-and-den addition at the back of the house. On January 6, 1992, the zoning administrator approved Lula's application and issued a building permit.

Lula constructed the kitchen-and-den addition sometime between 1993 and 1994. But instead of building on the back of the house, she built the addition on the side. During construction, Lula's son Haynes also built a deck off the house.

Between 2001 and 2002, Lula built three more improvements: a carport, a shed, and a gazebo. The carport is two car-lengths long and was used daily by the Grooms family and their friends up through the date of trial. Lula and her children used the shed to store holiday decorations. They also used it on occasion as a smokehouse. After Lula's death, Smith continued to use the shed for storage. The metal gazebo is about 15 feet long, 15 feet wide, and 10 feet tall. The Grooms family used the gazebo "[e]very Sunday after church" and at other times for family gatherings and reunions.

*Alexander discovers that the structures encroach on her property.*

In 2015, Alexander moved into 127 Estelles Lane, next door to Lula's property. Alexander got along well with the Bennett parties at first, hanging "out with them at the gazebo" and visiting their home. For eight years, Alexander repeatedly asked the Bennett parties "to walk around" with her to "identify the lines on the property." They refused. In June 2023, Alexander arranged for a formal survey of the Bennett parties' property. The survey revealed the following encroachments on Alexander's property:

- the house encroaches 2.7 feet;

- the carport encroaches 17.5 feet;

- the shed encroaches 9.5 feet; and

- the gazebo encroaches 10.8 feet.

*The March 2025 jury trial established unequivocal evidence of adverse possession.*

The Bennett parties sued Alexander for ejectment and quiet title. The facts set forth above were established at a jury trial on March 13, 2025. Bennett, Smith, and Haynes each testified that they had not been aware that any of their structures encroached on Alexander's land. Each said that their family used the structures to the exclusion of others and that they never sought permission to do so. Bennett recalled that when her father died, she walked the property with Lula to learn about the property lines. Based on what Lula showed her, Bennett believed that all the structures were "[m]ost definitely" on Lula's side of the boundary line. Alexander testified that she too believed that the structures were on Lula's property until she learned otherwise from the survey she had commissioned.

At the close of evidence, the trial court gave (among others) an agreed-upon jury instruction on "Possession by Mistake":

> The court instructs the jury that where a person occupies and possesses the land of another through a misapprehension or

mistake, as to the boundaries of the land, with no intention to claim as his own that which does not belong to him, but only intending to claim to the true boundary line, wherever that may be, he does not hold adversely, and the reason why this is so is because in this State intention to hold adversely is an indispensable requirement to adverse possession.

If the jury believes that the plaintiffs occupied and possessed the land in controversy through a misapprehension or mistake as to the boundaries of their land, with no intention to claim as their own that which did not belong to them, then the plaintiffs never took hostile possession, a necessary element to prove adverse possession.

The court further instructed the jury:

Where a party has "a definite and positive intention to occupy, use, and claim the land," the hostile character of that party's possession is not undercut by the fact that she mistakenly believed the land was hers.

When a claimant mistakenly believes that a particular "line on the ground" represents the extent of his or her own land and treats all the land within the line on the ground as his or her own in a manner that satisfies the other requirements of adverse possession—particularly actual, exclusive, and visible possession—then the hostility requirement is generally satisfied.

Following closing arguments, the jury returned its verdict for Alexander.

The Bennett parties moved to set aside the verdict and for judgment in their favor as a matter of law. After hearing argument on July 10, 2025, the trial court entered a final order denying their motion and confirming the jury verdict "[f]or the reasons stated by the Court on the record." The Bennett parties noted a timely appeal from the July 10 order, but the record does not contain a transcript of the July 10 hearing on their motion to set aside the verdict.

*The trial court certifies a transcript of the jury trial.*

There was no court reporter at trial but the Bennett parties obtained from the trial court an audio recording from which a licensed court reporter prepared a transcript. Over Alexander's objection, the trial court accepted that transcript in a "Rule 5A:8(d) Order." The order recited

- 4 -

that "the transcript, which was certified by the reporter who prepared it," was "'a transcript of the record' of the March 13 . . . jury trial as contemplated by Va. Code § 17.1-128."

As for the hearing on the motion to set aside the verdict, the July 10 order stated that "[n]either party argues, nor does the Court find, that a transcript of that brief hearing is necessary to Plaintiffs' appeal." The order said that the Bennett parties had argued "consistent with and based upon" the motion to set aside filed shortly after trial. Alexander's counsel had argued "consistent with and based upon" the written opposition to the Bennett parties' motion. The order noted that the court had confirmed the jury verdict because "the case presented a proper question for the jury to decide by weighing the evidence, testimony, and credibility concerning the instructions of law." The trial court concluded that the "jury verdict was not plainly wrong or without evidence to support it."

The Bennett parties noted a timely appeal.

ANALYSIS

The Bennett parties assign error to the trial court's denying their motion to set aside the verdict. Alexander argues that the Bennett parties failed to preserve that argument. She also assigns cross-error to the trial court's decision to accept the trial transcript prepared from the audio recording.

*A. The Bennett Parties preserved their objections (Alexander Cross-Error I).*

Alexander argues that the Bennett parties defaulted their arguments on appeal by writing "Seen and Objected to" on the final order. She claims that the Bennett parties failed to preserve their arguments because "no supporting facts or arguments were given as to why the objection was made."

This claim is meritless. Because the Bennett parties preserved their arguments in their motion to set aside the verdict, they did not need to repeat their objections when they endorsed the final order.

Indeed, the Supreme Court made clear in *Helms v. Manspile*, 277 Va. 1 (2009), that under Code § 8.01-384, a party who has made its objection clear on the record does not have to repeat that objection in the final order to preserve the issue for appellate review. *Id.* at 6-7. The appellants in *Helms* filed a memorandum of law as their closing argument in the trial court, asserting their claim for adverse possession. *Id.* at 6. After the trial court rejected their arguments, they signed the final order only as "seen." *Id.* The Court held that their argument was preserved by their written filing despite their failure to object to the final order. *Id.*

Under Code § 8.01-384, "[n]o party, after having made an objection or motion known to the court, shall be required to . . . make such objection or motion again in order to preserve his right to appeal." It continues: "No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order." *Id.* *Helms* rejected the suggestion that a different conclusion was required by the contemporaneous-objection rule—Rule 5:25 in the Supreme Court and Rule 5A:18 in this Court. The Court said that "Code § 8.01-384(A) . . . is controlling over Rule 5:25, and we must apply the statutory provision." *Helms*, 277 Va. at 7.

The Supreme Court extended the reasoning of *Helms* in *Cashion v. Smith*, 286 Va. 327 (2013), holding that the appellant did not waive his arguments on demurrer by signing the final order with the endorsement "WE ASK FOR THIS." *Id.* at 336. In summary,

> Once a litigant informs the circuit court of his or her legal argument, "[i]n order for a waiver to occur within the meaning of Code § 8.01-384(A), the record must affirmatively show that the party who has asserted an objection has abandoned the objection or has demonstrated by his conduct the intent to abandon that objection."

*Helms*, 277 Va. at 6 (alteration in original) (quoting *Shelton v. Commonwealth*, 274 Va. 121, 127-28 (2007)).

Under *Helms* and *Cashion*, the Bennett parties preserved their objections in the trial court by filing their 19-page motion to set aside the verdict in which they insisted that they had proven all the elements of adverse possession, including hostile intent. They argued that "the uncontradicted and corroborated testimony is that Plaintiffs and their predecessor in title had a positive and definite intent to use the land upon which the structures were located as their own and to the exclusion of all others."

We also reject Alexander's claim that the Bennett parties defaulted their arguments by failing to file a transcript of the July 10 hearing on their motion to set aside the verdict. "When an appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). But the trial court made clear in its Rule 5A:8(d) Order that the Bennett parties' arguments at the July 10 hearing were "consistent with and based upon [their] written motion." So the absence of the hearing transcript does not impede our ability to rule on the questions presented. *Accord Shaw-McDonald v. Eye Consultants of N. Va., P.C.*, 79 Va. App. 576, 582 n.2 (2024) (finding appellant's arguments in opposition to the motion to dismiss preserved in the record and trial court's opinion despite the absence of a hearing transcript), *aff'd on other grounds*, 304 Va. 164 (2025).

> B. *The trial court did not err in accepting a certified transcript of its own audio recording of the trial (Alexander Cross-Error 2).*

Alexander argues that the trial court "erroneously allowed a mechanical electronic recording of the trial to be entered into the record as an official transcript." We disagree.

Code § 17.1-128 provides that "[i]n all civil cases, the court or judge trying the case may by order entered of record provide for the recording verbatim of the evidence and incidents of

- 7 -

trial either by a court reporter or by *mechanical or electronic devices* approved by the court."

(Emphasis added). As explained in its Rule 5A:8(d) Order, the trial court recorded the jury trial

"through its own electronic audio recording system," something the court does "as a matter of

course in all proceedings." The order further recited that the court had "reviewed the transcript"

and found that it was "'a transcript of the record' of the March 13 . . . jury trial as contemplated

by Va. Code § 17.1-128." That was all that was necessary to validate the transcript.

Alexander's suggestion that the Bennett parties had to arrange for their own court

reporter to transcribe the trial, rather than rely on the trial court's recording, would also run afoul

of the statute's assurance that "[t]he failure to secure the services of a reporter, or the failure to

have the case reported or recorded for any other reason, shall not affect the proceeding or trial."

Code § 17.1-128. A dismissal of the case based on their asserted "failure to secure the services

of a court reporter" would have violated that statutory command and adversely "'affect[ed] the

proceeding or trial.'" *Shapiro v. Younkin*, 279 Va. 256, 262 (2010) (alteration in original)

(quoting Code § 17.1-128).

*C. The Bennett parties proved adverse possession by clear and convincing evidence.*

When a trial court has declined to set aside a jury verdict, we consider whether the

evidence presented, taken in the light most favorable to the prevailing party, "was sufficient to

support the jury verdict in favor of" that party. *Ferguson Enters., Inc. v. F.H. Furr Plumbing,*

*Heating & Air Conditioning, Inc.*, 297 Va. 539, 547-48 (2019). "We will not set aside a trial

court's judgment sustaining a jury verdict unless it is plainly wrong or without evidence to

support it." *Id.* at 548 (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)).

"To establish title to real property by adverse possession, a claimant must prove actual,

hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory

period of 15 years." *Grappo v. Blanks*, 241 Va. 58, 61 (1991). The evidence was

uncontroverted that the use of the disputed land by Lula and her children was actual, exclusive, visible, and continuous under a claim of right for a period longer than 15 years. But Alexander argues that the use was not "hostile" because Lula and her children were mistaken about the boundary line. The Bennett parties counter that, under *Quatannens v. Tyrell*, 268 Va. 360, 372 (2004), their mistake about the boundary line did not negate their hostile intent to occupy the land.

Alexander's brief fails to mention *Quatannens*, but we find it dispositive. The Court there found that the Quatannens had adversely possessed a strip of land on their neighbors' property despite being mistaken about the property line. *Id.* at 364. After surveying the caselaw on possession by mistake, the Court reiterated the "narrow circumstances" that

> [w]here a mistake occurs in determining the location of a boundary line described in a deed and the claimant has not proved "the definite and positive intention . . . to occupy, use and claim as his own the land up to a particular and definite *line on the ground*," then the claimant cannot establish adverse possession.

*Id.* at 372 (second alteration in original). On the other hand:

> when a claimant mistakenly believes that a particular "line on the ground" represents the extent of his or her own land and treats all the land within the line on the ground as his or her own in a manner that satisfies the other requirements of adverse possession—particularly actual, exclusive, and visible possession—*then the hostility requirement is generally satisfied*.

*Id.* (emphasis added).

The Quatannens had conceded at trial that they never intended to possess land that was not theirs. *Id.* at 364. But that did not matter; it was "irrelevant and serve[d] only to confuse ideas." *Id.* at 373 (quoting *Christian v. Bulbeck*, 120 Va. 74, 111 (1916)). The Court held that the Quatannens had "provided clear and convincing proof that they possessed 'the positive and definite intention to claim *as their own* the land up to a particular and definite line *on the ground*.'" *Id.* (quoting *Christian*, 120 Va. at 90). So the Court reversed the trial court's

judgment, finding that the Quatannens had proved their claim for adverse possession as a matter of law. *Id.* at 376.

The same result is required here. Bennett testified that when she and her mother walked the property after her father's death, they believed that the structures were "definitely" on their side of the boundary line. Like the Quatannens, none of the Bennett parties knew the boundary line until Alexander commissioned the boundary survey. But three of them testified without contradiction that they used the carport, shed, and gazebo to the exclusion of others and without anyone's permission. In other words, Lula and her children used "the land in a manner consistent with ownership, including . . . building . . . structure[s] on the land." *Quatannens*, 268 Va. at 373.

Similar to *Quatannens*, the record here shows that the Bennett parties established their title by adverse possession as a matter of law. Lula and her children "had a definite and positive intention to occupy, use, and claim the land—so much so that [Alexander] believed that [they] owned the land." *Id.* The hostile nature of the Bennett parties' possession was not "undercut by the fact that they mistakenly believed the land was theirs." *Id.* So the trial court erred as a matter of law in failing to set aside the jury's verdict and in failing to enter judgment for the Bennett parties. *Id.* at 376; *Helms*, 277 Va. at 10 (holding "as a matter of law" that plaintiffs "established title ownership, by adverse possession, of Parcel 2," remanding "to the circuit court for the entry of a judgment, which shall be recorded among the land records, that the Helms own title to Parcel 2").[1]

---

[1] Having resolved this appeal in favor of the Bennett parties, we reject Alexander's claim for $2,500 under Code § 8.01-682, as the judgment is reversed, not affirmed.

CONCLUSION

Because the Bennett parties proved their adverse possession of the land beneath the house, carport, shed, and gazebo by clear and convincing evidence, the trial court should have set aside the verdict and entered judgment for the Bennett parties. We thus "reverse the judgment of the trial court and remand for entry of judgment for the [appellants] and such other action necessary to establish their title." *Quatannens*, 268 Va. at 376.

*Reversed and remanded.*